## STURGIS BANK & TRUST COMPANY v
## HILLSDALE COMMUNITY HEALTH CENTER

Docket No. 261767. Submitted September 8, 2005, at Grand Rapids. Decided October 27, 2005, at 9:05 a.m. Leave to appeal sought.

Sturgis Bank & Trust Company, as conservator of the estate of Tanya E. Walling, a legally incapacitated person, brought an action in the Hillsdale Circuit Court against Hillsdale Community Health Center and several nurses, alleging medical malpractice and ordinary negligence relating to injuries sustained by Walling in a fall from her hospital bed. The claims against the nurses were dismissed. The court, Michael R. Smith, J., granted summary disposition for the remaining defendant with respect to the claim of ordinary negligence, ruling that the claim sounded in medical malpractice, not ordinary negligence. The court also dismissed with prejudice the claim of medical malpractice, ruling that the nurse and the nurse practitioner who provided affidavits of merit filed with the complaint were not qualified to opine on proximate causation and that the affidavit of merit from a physician was not submitted within the period of limitations. The plaintiff appealed.

The Court of Appeals *held*:

1. The circuit court erred in ruling that the affidavits of merit from the nurse and nurse practitioner were inadequate and erred in dismissing the medical malpractice claim. The affidavits executed by the nurse and the nurse practitioner were sufficient for the purposes of MCL 600.2912d(1), which concerns the requirement of affidavits of merit being filed with the complaint, and of MCL 600.2169 even if the affiants did not have the expertise or qualifications necessary to establish proximate cause. The requirement for presenting an effective affidavit of merit is to have it executed by a peer of the party alleged to have committed malpractice who has the same specialty, board certification, or health profession as the tortfeasor. The expert's qualifications required for the affidavit of merit are those identified in MCL 600.2169(1). MCL 600.2169(2) does not list the qualifications for the affiant; rather it provides the method by which the court evaluates at trial whether an expert is qualified, and it requires the court to consider the four factors listed for that evaluation.

2. In a medical malpractice action, a plaintiff needs to obtain a medical expert at two different stages of the litigation, i.e., at the time the complaint is filed and at the time of trial. What satisfies the standard at the first stage may not satisfy the requirements at the second stage.

3. The circuit court correctly dismissed the ordinary negligence cause of action. The claim raised questions of medical judgment beyond the realm of common knowledge and experience, and thus sounded in medical malpractice rather than negligence. The claim involved issues of risk assessment and the numerous ways to address the risk of falling from a bed, including the use of bedrails, bed alarms, and restraints, all of which entail some degree of nursing or medical knowledge.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. NEGLIGENCE — MEDICAL MALPRACTICE — AFFIDAVITS OF MERIT — AFFIANTS.

The affiant on an affidavit of merit filed with a complaint alleging medical malpractice must, in the plaintiff's attorney's reasonable belief, be a peer of the party alleged to have committed malpractice and have the same specialty, board certification, or health profession as the alleged tortfeasor; the affidavit must include the applicable standard of practice or care, the health professional's opinion that a breach of that standard occurred, what actions should have been done to comply with that standard, and the manner in which the breach was the proximate cause of the injury alleged (MCL 600.2912d[1], 600.2169[1]).

2. NEGLIGENCE — MEDICAL MALPRACTICE — TRIAL — EXPERT TESTIMONY.

A court determining whether a proposed expert is qualified to give expert testimony at trial in a medical malpractice case must evaluate the educational and professional training of the proposed witness, the area of specialization of the expert witness, the length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or specialty, and the relevancy of the expert's testimony (MCL 600.2169[2]).

*Benefiel & Farrer* (by *William L. Benefiel*) for the plaintiff.

*Smith Haughey Rice & Roegge* (by *Richard C. Kraus* and *Douglas G. Powe*) for the defendant.

Before: SMOLENSKI, P.J., and MURPHY and DAVIS, JJ.

MURPHY, J. In this medical malpractice action,[1] in which plaintiff alleges that Tanya E. Walling sustained a closed-head injury caused by a fall from a hospital bed, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant Hillsdale Community Health Center (hospital). The focus of this appeal regards affidavits of merit and entails statutory construction of MCL 600.2912d and 600.2169 and the interplay between the statutes. We affirm in part, reverse in part, and remand.

This action arises out of alleged medical malpractice and negligence that occurred while Walling was being treated at defendant hospital. Walling had been transported to the hospital following an automobile accident in which she was injured. During the hospitalization, Walling allegedly fell out of her hospital bed and sustained a closed-head injury, brain damage, impaired cognitive functioning, and various other related injuries. Sturgis Bank & Trust Company was appointed limited conservator of Walling's estate by the probate court after Walling had petitioned the court, asserting that she was unable to manage her property and business affairs as a result of mental deficiency and physical illness or disability. The conservatorship was limited to the prosecution and settlement of Walling's claims arising from the motor vehicle accident and the alleged malpractice.

Plaintiff originally brought suit against defendant and three individual members of defendant's nursing staff. The claims against the three nurses were dismissed, and they are not parties to this appeal. Plaintiff

---

[1] Plaintiff also raises a claim of ordinary negligence that we shall address later in this opinion.

alleged in the complaint that defendant's nursing staff was negligent in failing to prevent Walling from falling out of her hospital bed, which could have been accomplished by proper monitoring and the use of bedrails, where hospital personnel were aware that Walling was in a physical and mental state that required heightened scrutiny in guarding against such an accident. Pursuant to MCL 600.2912d(1), plaintiff's complaint was accompanied by affidavits of merit from a registered nurse and a nurse practitioner.

Defendant filed a motion for summary disposition, arguing that summary dismissal was appropriate because the affidavits of merit were defective and the period of limitations had expired. More particularly, defendant maintained that the nurse and the nurse practitioner, while employed in the same health profession as those accused of committing the malpractice, were not qualified under MCL 600.2169(2) to aver with respect to the proximate cause of the injury as required by MCL 600.2912d(1)(d). The trial court initially denied the motion, finding that plaintiff's experts complied with the requirements of MCL 600.2912d(1). The court also accepted an affidavit of merit from a medical doctor that was proffered by plaintiff after the statutory period of limitations elapsed. The trial court allowed the late affidavit as a retroactive amendment to the affidavits previously filed by plaintiff with the complaint.

Subsequently, defendant filed a motion for partial summary disposition with respect to the ordinary negligence count contained in the complaint, and defendant additionally filed a motion for reconsideration relative to the court's ruling on the original motion for summary disposition. Both motions were heard by the trial court in a single hearing, and the court determined

that plaintiff's claims sounded in medical malpractice and not ordinary negligence. Moreover, the trial court reversed its earlier decisions with regard to the sufficiency of the affidavits executed by the nurse and the nurse practitioner and as to the doctor's affidavit. The court found that it had committed palpable error. The court now believed that the nurse and the nurse practitioner were not qualified to opine that the alleged breach of the standard of care was the proximate cause of plaintiff's alleged closed-head injury and that the doctor's affidavit was untimely and could not be considered. The trial court found that two affidavits of merit were necessary, one from a nurse because this was the health profession practiced by those accused of malpractice and one from a doctor who could aver with regard to proximate cause. Accordingly, the trial court dismissed plaintiff's action with prejudice. Plaintiff's motion for reconsideration was denied, and plaintiff appealed to this Court.

On appeal, plaintiff argues that it was unnecessary under MCL 600.2912d(1) to obtain the affidavit of a physician in this case in order to make an averment regarding proximate cause and that the affidavits of the nurse and the nurse practitioner were sufficient. In the alternative, plaintiff argues that counsel proceeded in good faith and had a reasonable belief that the affidavits from the nurse and the nurse practitioner complied with the requirements of MCL 600.2169 as directed by MCL 600.2912d(1). Additionally, plaintiff contends that the trial court should have allowed an amendment with retroactive application by way of the doctor's affidavit. Furthermore, plaintiff maintains that the ordinary negligence cause of action should not have been dismissed because the allegations fell within the purview of a layperson's understanding. Next, plaintiff calls on us to apply equity pursuant to *Bryant v Oakpointe Villa*

*Nursing Ctr, Inc*, 471 Mich 411, 432-433; 684 NW2d 864 (2004), in an effort to save the malpractice claim. Finally, plaintiff argues that Walling's mental incompetence tolled the period of limitations.

We hold that the affidavits executed by the nurse and the nurse practitioner were sufficient for purposes of MCL 600.2912d(1) and the relevant subsection of MCL 600.2169 even if the nurse and the nurse practitioner did not have the expertise or qualifications necessary to establish proximate cause. Accordingly, we reverse the trial court's ruling on the issue. Additionally, we conclude that medical judgment is implicated in determining whether safeguards against a fall should have been implemented and in determining the extent of those safeguards, and thus the trial court properly dismissed the ordinary negligence cause of action. In light of our holding, it becomes unnecessary to address plaintiff's additional arguments.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004). Similarly, an issue posing a question of statutory construction is reviewed de novo. *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003). Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). The words contained in a statute provide us with the most reliable evidence of the Legislature's intent. *Id.* at 549. In discerning legislative intent, this Court gives effect to every word, phrase, and clause in the statute. *Id.* We must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. *Id.* This Court must avoid a construction that would render any part of a statute

surplusage or nugatory. *Bageris v Brandon Twp*, 264
Mich App 156, 162; 691 NW2d 459 (2004). " 'The
statutory language must be read and understood in its
grammatical context, unless it is clear that something
different was intended.' " *Shinholster, supra* at 549
(citation omitted). Where the wording or language of a
statute is unambiguous, the Legislature is deemed to
have intended the meaning clearly expressed, and we
must enforce the statute as written. *Id.* "A necessary
corollary of these principles is that a court may read
nothing into an unambiguous statute that is not within
the manifest intent of the Legislature as derived from
the words of the statute itself." *Roberts v Mecosta Co
Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).
Statutory language, unambiguous on its face, may be
rendered ambiguous through its interaction with and
relationship to other statutes. *People v Valentin*, 457
Mich 1, 6; 577 NW2d 73 (1998). If statutes can be
construed in a manner that avoids conflict, then that
construction should control the analysis. *People v Webb*,
458 Mich 265, 274; 580 NW2d 884 (1998). "We construe
an act as a whole to harmonize its provisions and carry
out the purpose of the Legislature." *Macomb Co Pros-
ecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247
(2001).

Medical malpractice actions may be brought against
any licensed health facility or licensed health care
professional. See MCL 600.5838a. Nurses are licensed
health care professionals within the terms of the stat-
ute. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 20;
651 NW2d 356 (2002). MCL 600.2912d(1) provides that
in medical malpractice actions, a plaintiff or the plain-
tiff's attorney "shall file with the complaint an affidavit
of merit signed by a health professional who the plain-
tiff's attorney reasonably believes meets the require-

ments for an expert witness under [MCL 600.2169]." Subsection 1 of § 2912d further provides:

> The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
>
> (a) The applicable standard of practice or care.
>
> ' (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.
>
> (c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.
>
> (d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

We conclude that § 2912d(1) incorporates § 2169 solely with respect to *"requirements for an expert witness"* as expressly stated in § 2912d(1), or, in other words, an expert's qualifications. (Emphasis added.)

MCL 600.2169 provides in relevant part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) [not applicable]
>
> (b) [D]uring the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:
>
> (i) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed . . . .

* * *

(2) In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:

(a) The educational and professional training of the expert witness.

(b) The area of specialization of the expert witness.

(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.

(d) The relevancy of the expert witness's testimony.

While § 2169(1) sets forth requirements or qualifications for an expert witness, § 2169(2) is not a set of requirements or qualifications; rather, it is the method by which the court *evaluates* whether an expert is qualified, and it directs the court to take into consideration the four factors listed therein. Here, § 2169(1) only requires that the affiants, the nurse and the nurse practitioner, practice or teach in the same health profession as those who committed the alleged malpractice, i.e., defendant's nurses. Either the nurse's affidavit or the nurse practitioner's affidavit sufficed. Accordingly, the affidavits complied with § 2912d(1) where the affidavits also contained the necessary statements regarding the standard of care, breach of the standard of care, the actions necessary to comply with the standard of care, and causation. We find that the Legislature did not intend, for purposes of affidavits of merit, that a court undertake an evaluation regarding the credibility and qualifications of a particular expert beyond that stated in § 2169(1). This conclusion is supported by the language in § 2912d(1), referencing "the requirements for an expert witness under section 2169." We hold that § 2912d(1) implicates § 2169(1), but not § 2169(2). Although § 2169(1) specifically references expert testi-

mony relative to the standard of practice or care only, it is evident that the Legislature simply intended that an affidavit of merit be executed by an expert who would be considered a peer of the party alleged to have committed malpractice by having the affiant be of the same specialty, board certification, or health profession as the tortfeasor.

Other portions of § 2169, such as subsections 4 (an expert shall not testify on a contingency fee basis) and 5 (discovery limitations in attempting to surmise whether an expert is qualified), are clearly not applicable in the context of affidavits of merit, so it does not stretch constructionist logic to conclude that subsection 2 is likewise capable of not being applicable. Evaluating the qualifications of an expert under § 2169(2) is for the trial court to undertake at trial, with a plaintiff being left to produce, if possible, the necessary witnesses at trial to support all the elements of a cause of action, including causation. To rule otherwise would allow for battles to erupt or minitrials to take place merely over the issue concerning the validity of an affidavit of merit, necessitating production of such materials as a curriculum vitae and the taking of testimony. We do not believe that the Legislature intended that a trial court conduct proceedings to determine if an expert practicing or teaching in the same health profession as the alleged tortfeasor is qualified to speak on issues of causation or, for that matter, issues concerning the standard of care and the breach of that standard. MCL 600.2912d contains no language suggesting such an undertaking.

Our holding finds implicit support in the Michigan Supreme Court's decision in *Grossman v Brown*, 470 Mich 593; 685 NW2d 198 (2004). In *Grossman, supra* at 598-600, our Supreme Court noted the need for a plaintiff in a medical malpractice action to obtain a

medical expert at two different stages of the litigation, i.e., at the time the complaint is filed and at the time of trial, recognized the differing features of § 2912d(1) and § 2169, and stated:

The Legislature's rationale for this disparity is, without doubt, traceable to the fact that until a civil action is underway, no discovery is available. See MCR 2.302(A)(1). Thus, the Legislature apparently chose to recognize that at the first stage, in which the lawsuit is about to be filed, the plaintiff's attorney only has available publicly accessible resources to determine the defendant's board certifications and specialization. At this stage, the plaintiff's attorney need only have a *reasonable belief* that the expert satisfies the requirements of MCL 600.2169. See MCL 600.2912d(1). However, by the time the plaintiff's expert witness testifies at trial, the plaintiff's attorney has had the benefit of discovery to better ascertain the qualifications of the defendant's physician, and, thus, the plaintiff's attorney's reasonable belief regarding the requirements of MCL 600.2169 does not control whether the expert may testify.

\* \* \*

Thus, at the moment the affidavit of merit was being prepared, plaintiff's attorney used the resources available to him and reasonably concluded that he had a match sufficient to meet the requirements for naming an expert. It may be that what satisfies the standard at this first stage will not satisfy the requirements of MCL 600.2169 for expert testimony at trial. This will be decided on remand. To address this matter now, especially because there has been no fact-finding on the disputed factual questions, would be premature. It will be for the trial court, in its role as initial interpreter of the statute and qualifier of experts, to decide these issues as they become timely. [*Grossman, supra* at 599-600.]

Likewise, in the case at bar, the issue whether plaintiff's affiants can substantively attest or address matters of causation is not a concern for the purposes of

the "first stage" of the litigation in which an affidavit of merit must be filed under § 2912d(1); rather the issue can be pursued in later proceedings such as at trial. We point out that § 2169(2) mandates that a trial court entertain issues regarding the expert's length of time engaged in the practice or instruction of a particular medical field and the relevancy of an expert's testimony. These evaluation factors simply do not fit into or are nonsensical relative to affidavits of merit. Relevancy cannot be adjudicated at the affidavit stage of the litigation, nor do we see any authority for a trial court to reject an affidavit on a finding that a plaintiff's expert was only engaged in the same health profession for, by way of example, a couple of months. The Legislature had to have intended to solely implicate § 2169(1) when it generally referenced § 2169 in § 2912d(1) and had to have intended to relegate § 2169(2) to matters pertaining only to expert trial testimony.

Our analysis is not affected by our Supreme Court's recent decision in *Halloran v Bhan*, 470 Mich 572, 578 n 6; 683 NW2d 129 (2004), in which the Court noted that § 2169(2) deals with *any* expert witness and that "the general provisions of § 2169(2) must be considered after a standard-of-care witness is qualified under the specific provisions of § 2169(1)." *Halloran* is distinguishable as it did not address affidavits of merit; there is no mention of § 2912d. Rather, the Supreme Court's analysis addressed a proposed expert witness who was prepared to testify at trial, but was stricken from the witness list by the trial court because he did not have the same board certification as the defendant. *Halloran, supra* at 575-576.

Accordingly, we conclude that plaintiff was only required to submit an affidavit of an expert practicing or teaching in the same health care profession as those

accused of wrongdoing and that the affidavit contain the necessary elements listed in § 2912d(1)(a) through (d). This was accomplished, and, therefore, the trial court erred in dismissing the medical malpractice claim.

On the issue whether the trial court erred in dismissing the ordinary negligence cause of action, we agree with the trial court's assessment that questions of medical judgment come into play, and thus the court did not err in dismissing the claim. In *Bryant,* our Supreme Court revisited the standard for determining whether a claim sounds in medical malpractice or ordinary negligence. There, the Supreme Court observed:

> A medical malpractice claim is distinguished by two defining characteristics. First, medical malpractice can occur only " 'within the course of a professional relationship.' " Second, claims of medical malpractice necessarily "raise questions involving medical judgment." Claims of ordinary negligence, by contrast, "raise issues that are within the common knowledge and experience of the [factfinder]." Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions. [*Bryant, supra* at 422 (citations omitted; alteration in original).]

In the present case, it is all but conceded that there was a professional relationship between defendant and Walling, and neither party disputes this fact.

Thus, this issue turns on the second question raised by *Bryant*—"whether the claim raises questions of medical judgment beyond the realm of common knowl-

edge and experience." *Bryant, supra* at 422. Regarding this second step of the inquiry, our Supreme Court stated:

> After ascertaining that the professional relationship test is met, the next step is determining whether the claim raises questions of medical judgment requiring expert testimony or, on the other hand, whether it alleges facts within the realm of a jury's common knowledge and experience. If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved. As we stated in *Dorris [v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 46; 594 NW2d 455 (1999)]:
>
> "The determination whether a claim will be held to the standards of proof and procedural requirements of a medical malpractice claim as opposed to an ordinary negligence claim depends on whether the facts allegedly raise issues that are within the common knowledge and experience of the jury or, alternatively, raise questions involving medical judgment." [*Bryant, supra* at 423-424 (citations omitted).]

Here, plaintiff alleged in the complaint that defendant's nurses were negligent in failing to prevent Walling's fall, in permitting her to arise unassisted, in failing to protect her from falling, and in otherwise failing to exercise such measures when the nurses knew, or should have known, of Walling's risk of falling. The complaint also alleged that, at the time of the fall, Walling was lethargic, in pain, uncooperative, noncompliant, and had labored breathing. There was documentary evidence indicating that Walling was restless, somewhat disoriented, in pain, being medicated with morphine for pain, and instructed not to get out of bed.

At the depositions of various nurses involved in Walling's treatment, plaintiff's counsel continually focused his questioning on risk assessment with respect to falling out of bed and the various factors taken into consideration when making an assessment, including the medications being prescribed to the patient and the patient's state of mind. It is clear from the deposition testimony that a nursing background and nursing experience are at least somewhat necessary to render a risk assessment and to make a determination regarding which safety or monitoring precautions to utilize when faced with a patient who is at risk of falling. While, at first glance, one might believe that medical judgment beyond the realm of common knowledge and experience is not necessary when considering Walling's troubled physical and mental state, the question becomes entangled in issues concerning Walling's medications, the nature and seriousness of the closed-head injury, the degree of disorientation, and the various methods at a nurse's disposal in confronting a situation where a patient is at risk of falling. The deposition testimony indicates that there are numerous ways in which to address the risk, including the use of bedrails, bed alarms, and restraints, all of which entail some degree of nursing or medical knowledge. Even in regard to bedrails, the evidence reflects that hospital bedrails are not quite as simple as bedrails one might find at home. In sum, we find that, although some matters within the ordinary negligence count might arguably be within the knowledge of a layperson, medical judgment beyond the realm of common knowledge and experience would ultimately serve a role in resolving the allegations contained in this complaint. Accordingly, we find that the trial court did not err in dismissing the ordinary negligence claim.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

DAVIS, J., concurred.

SMOLENSKI, P.J. I concur in the result only.