# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM BRISTOL, M.D.,

Plaintiff-Appellant,

v

HISHAM DADO, M.D.,

Defendant,

and

ST. CLAIR SPECIALTY PHYSICIANS, P.C., and
DAVITA, INC., d/b/a DAVITA MACOMB
KIDNEY CENTER,

Defendants-Appellees.

UNPUBLISHED
March 24, 2015

No. 318628
Macomb Circuit Court
LC No. 2011-004245-NH

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff appeals by right the trial court's order granting summary disposition[1] to defendant Davita, Inc. ("Davita").[2] We affirm.

---

[1] The trial court did not specify under which subrule it granted summary disposition. Davita moved for summary disposition under both MCR 2.116(C)(8) and (C)(10). Because the trial court considered material beyond the pleadings in making its ruling, we treat the grant of summary disposition as being pursuant to MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

[2] Plaintiff also claims an appeal by right from a subsequent October 7, 2013 stipulated order dismissing without prejudice plaintiff's claims against defendants Dr. Hisham Dado, M.D. and St. Clair Specialty Physicians, P.C. However, plaintiff does not present any arguments on appeal related to that order. The October 7, 2013 order was a final order following which an appeal by right could be taken. MCR 7.202(6)(a)(i). Plaintiff's counsel indicated at the motion hearing on

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This action arose out of plaintiff's dialysis treatment. Plaintiff, a medical doctor himself, alleges that he suffered vestibular[3] problems after receiving intravenous Gentamicin, an antibiotic ordered by defendant Dr. Hisham Dado, M.D. ("Dado"), a nephrologist, during dialysis at Davita. Dado was Davita's medical director. Dado was also a partner in defendant St. Clair Specialty Physicians, P.C ("St. Clair").

Since June 2008, plaintiff had been treated by Dr. Robert Provenzano, another St. Clair nephrologist. Provenzano referred plaintiff for dialysis and gave plaintiff the names of two dialysis centers, including Davita. Provenzano suggested that plaintiff select Davita because it was closer to plaintiff's home.

Plaintiff began dialysis at Davita in early 2009. Shortly before plaintiff began the dialysis, he had been hospitalized for an infection in a shunt, and a doctor had ordered that he was to receive intravenous Vancomycin, an antibiotic, with his dialysis treatment. Plaintiff received Vancomycin with his dialysis treatment at Davita through June 7, 2009. On or about June 6, 2009, plaintiff began receiving Gentamicin, rather than Vancomycin, for four to five weeks due to another blood-borne pathogen. Plaintiff stated in his deposition testimony that he did not know who had ordered the Gentamicin. Dado stated at his own deposition that the Gentamicin was ordered by an infectious disease physician and that he had called this physician "regarding the amount of Gentamicin and for how long." After receiving Gentamicin for four weeks, plaintiff was hospitalized for vestibular symptoms, such as dizziness and inability to stand. Thereafter, plaintiff was diagnosed with vestibular problems related to Gentamicin. Plaintiff testified at the time of his deposition that he continued to have dizziness, nausea, vomiting, loss of balance, and vision problems resulting from the Gentamicin he had received at Davita.

Plaintiff's one-count complaint alleged (1) that Dado was negligent in failing to properly monitor the Gentamicin and Vancomycin levels in plaintiff's blood, and in failing to counsel plaintiff regarding the risks and side effects of the antibiotics, and (2) that Davita and St. Clair, through their agents, employees, and staff nephrologists, were negligent in failing to ensure that appropriate policies and procedures were adopted and followed concerning the monitoring of Gentamicin and Vancomycin, in failing to ensure a qualified medical staff oversaw the administration of potentially ototoxic antibiotics, and in treating plaintiff. Davita moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that it was not vicariously liable for any negligence by Dado because Dado was not an agent or employee of Davita. After a

---

Davita's motion for summary disposition that, at least with regard to Dado, plaintiff's claims had been resolved. Plaintiff has thus abandoned appellate review of the subject of the October 7, 2013 order. See *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

[3] The vestibular system is the sensory system located in the inner ear that contributes to balance, spatial orientation, and eye movement. See vestibular.org/understanding-vestibular-disorder (last accessed December 30, 2014).

hearing on Davita's motion for summary disposition, the trial court held that Dado was not an employee of Davita "for hemodialysis at that location" and that Dado had provided medical treatment to plaintiff in his capacity as an employee of St. Clair. The trial court entered an order granting summary disposition to Davita for reasons stated on the record, and dismissed all claims against Davita with prejudice. The trial court subsequently dismissed without prejudice, by stipulated order, plaintiff's remaining claims against Dado and St. Clair.

This appeal followed. Following oral argument, this Court ordered defendant Davita to file under a seal (and to serve upon counsel for plaintiff) a copy of "its employment or independent contractor agreement with defendant Hisham Dado, M.D." See *Bristol v Dado*, unpublished order of the Court of Appeals, issued January 15, 2015 (Docket No. 318628). The Court further directed the parties to file supplemental briefs "addressing whether Dado was acting as defendant-appellee Davita's agent during his treatment of plaintiff based on the contents of the contract." *Id.* The parties have complied with that order.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). When deciding a motion under MCR 2.116(C)(8), the court considers only the pleadings. MCR 2.116(G)(5). The court accepts all well-pleaded allegations as true and construes them in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 119. The motion may be granted only where the claims are " 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.' " *Id.*, quoting *Wade v Dep't of Corrections*, 439 Mich 158, 163, 483 NW2d 26 (1992). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A motion for summary disposition under MCR 2.116(C)(10) should be granted if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. *Id.*; see MCR 2.116(G)(3) and (4). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. *Skinner*, 445 Mich at 162.

III. SUMMARY DISPOSITION

A. DADO AS ACTUAL AGENT OR EMPLOYEE

Plaintiff argues that the trial court erred in granting summary disposition in favor of Davita where questions of fact existed with respect to whether Dado was an actual agent or employee of Davita.[4] We disagree.

As the party moving for summary disposition, Davita had the initial burden of production. *Quinto v Cross & Peters Co*, 451 Mich 358, 361; 547 NW2d 314 (1996). Thus, Davita was required to either (1) submit affirmative evidence that negated an essential element of plaintiff's claim, or (2) demonstrate to the court that plaintiff's evidence was insufficient to establish an essential element of plaintiff's claim. *Id.* at 362. If the moving party meets its burden, the burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. *Id.*

In support of its motion for summary disposition, Davita argued that Dado was an independent contractor, not an employee. Davita further argued that Dado's medical director position had nothing to do with his treatment of plaintiff and that Dado's treatment of plaintiff was done solely in Dado's capacity as an employee of St. Clair. Davita referred to Dado's deposition testimony that, as Davita's medical director, he was required to meet with the facility administrator, dietician, and social services several times a month, and to have "a basic big meeting every month to make sure the dialysis orders and the patients are taken care of very well with no interruption of service." Defendants also noted Dado's testimony that he was "[n]ot necessarily" contractually obligated to have his dialysis patients treated at Davita. In addition, defendants referred to Dado's testimony that "[b]asically, I'm an employee of St. Clair Specialty Physicians" and that he treated patients in that capacity. In response, plaintiff pointed to Dado's deposition testimony that he was Davita's medical director, that he had a written contract with Davita for the medical director position, and that he was paid an annual stipend by Davita for being its medical director.

In general, a facility that provides healthcare services is not vicariously liable for the negligence of a physician who (1) is not an employee of the facility and (2) merely uses the facility as the situs for treatment of his patient's problems. See *Grewe v Mt. Clemens General Hospital*, 404 Mich 240, 250-251; 273 NW2d 429 (1978). Here, the record shows that, regardless of whether Dado was an employee or agent of Davita with regard to his position as medical director, any claims that plaintiff had against Dado arose out of Dado's provision of medical treatment to plaintiff and did not arise from any conduct as Davita's medical director. A

---

[4] Plaintiff argues that Davita admitted in its answer to the complaint that Dado was its agent or employee. We disagree. Davita's answer indicated that it lacked information sufficient to form a belief as to the truth of the allegations that Dado was its agent or employee. Davita's answer complied with MCR 2.111(C) and had the effect of a denial. Plaintiff has not shown that Davita admitted that Dado was its agent or employee.

principal is only liable for the acts of its agent if those acts are committed in the scope of the agency. *St Paul Fire & Marine Ins Co v Ingall*, 228 Mich App 101, 109; 577 NW2d 188 (1998). It is undisputed that plaintiff had a pre-existing physician/patient relationship with St. Clair, at least initially through Provenzano. Dado stated in his deposition that at Provenzano's request he "assumed the responsibility" for being plaintiff's attending physician during his dialysis treatments at Davita because plaintiff was one of his partner's patients. Further, Dado's position with Davita as medical director did not require the provision of medical treatment to patients. Finally, Davita was, at most, merely the situs for Dado's provision of medical treatment, which occurred as a result of his St. Clair partnership relationship with Provenzano. Thus, the trial court correctly determined that, even if Dado was an agent or employee of Davita to the extent of his medical director position, any medical treatment he may have provided to plaintiff was as an agent or employee of St. Clair, and not as an agent or employee of Davita.

The Agreement for Medical Director ("Agreement") filed by Davita supports this conclusion. In the first instance, it specifically identifies Dado[5] as an independent contractor. Although such a provision is not determinative, it may support the determination that a party is an independent contractor. *Buckley v Prof Plaza Clinic Corp*, 281 Mich App 224, 234; 761 NW2d 284 (2008). Further, the Agreement indicates that Davita contracted with Dado to be its medical director, and principally to provide specified management and clinical oversight and supervisory services.[6] It did not provide for Dado to treat dialysis patients as a provider of medical nephrology services. The Agreement did not require that Dado use Davita's location, equipment, or staff for the provision of dialysis services to his or St. Clair's patients. Further, the Agreement is devoid of any evidence that Davita possessed the power to control or direct Dado's provision of medical treatment.

Plaintiff argues that the Agreement supports a finding that Dado was an agent of Davita because (1) the Agreement was with Dado's professional corporation, not St. Clair; (2) the Agreement restricted Dado from owning, operating, or in other ways participating in another business providing dialysis services for a period of years, and additionally could not share Davita's information with other entities in competition with Davita or in a manner contrary to its interests; (3) Dado had an office for his sole use at Davita, and was involved in hiring and supervising clinic employees; and (4) equipment at the site was to be used solely for dialysis, not the general practice of medicine. For reasons in part addressed elsewhere in this opinion, none of these arguments convinces us that the trial court erred. For example, the provision of an office for Dado's use is of little relevance, as is the fact that the Agreement was with Dado's

---

[5] The Agreement is actually between Davita and Dado's professional corporation, Hisham Dado, M.D., P.C. The Agreement indicates that Dado is joined in the Agreement "only to the extent set forth in a signed Joinder to this Agreement." No such "Joinder" accompanies the contract filed with this Court. Dado signed the Agreement in his capacity as president of his professional corporation, but not in his individual capacity.

[6] Davita employed no physicians or nephrologists for Dado to oversee or supervise, but rather employed only non-physician providers of clinical services.

professional corporation; nor is it significant that a medical director agreement would require that the dialysis equipment at a dialysis center be used for purposes of dialysis. The presence of a contractual provision restricting the competitive use of Davita's information is similarly irrelevant in determining whether the medical treatment provided to plaintiff by Dado was provided as an employee or agent of Davita.

Additionally, although the presence of a noncompetition clause may support a finding that a party is an employee, see *Buckley*, 281 Mich App at 237, the provision in this case does not so demonstrate, or otherwise demonstrate that Dado was acting for Davita when he provided medical treatment to plaintiff, but instead demonstrates that Dado's provision of nephrology services in fact was *not* on behalf of Davita, but instead was on behalf of St. Clair. The provision in question solely restricts Dado insofar as relates to the provision of "Dialysis Services" (as defined in the Agreement), but specifically does not restrict Dado (or his professional corporation) in any respect relative to the professional practice of medicine, specifically including nephrology. If the services that Dado provided for Davita included nephrology, one surely would expect that the Agreement would not exempt those services from the noncompetition restrictions of the Agreement. To the contrary, the exemption of medical and nephrology services from the noncompetition restrictions demonstrates that Dado was not performing medical or nephrology services in his capacity as medical director for Davita. There simply is insufficient evidence in the record to demonstrate otherwise, or to raise a material question of fact for submission to a jury.

We therefore conclude that the Agreement supports the trial court's conclusion that Dado was not an agent or employee of Davita when he provided medical services to plaintiff. The trial court thus did not err in dismissing plaintiff's claims against Davita for vicarious liability arising out of any actual agency or employment of Dado.

## B. DADO AS OSTENSIBLE AGENT

Plaintiff also argues that the trial court erred in granting summary disposition in favor of Davita because a reasonable juror could conclude that Dado was an apparent or ostensible agent of Davita for the purposes of medical treatment. We disagree.

A medical care facility may be liable for the acts of its actual or apparent agents. See *Chapa v St Mary's Hosp*, 192 Mich App 29, 33; 480 NW2d 590 (1991). An apparent, or ostensible, agency exists where "the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." *Grewe*, 404 Mich at 252 (quotation marks and citation omitted). To demonstrate an ostensible agency, plaintiff must show (1) that he had a reasonable belief that Dado was an agent of Davita, (2) that his belief was generated by some act or neglect on the part of Davita, and (3) that he was not guilty of negligence. *Id*. at 252-253; *Zdrojewski v Murphy*, 254 Mich App 50, 66; 657 NW2d 721 (2002). In other words, "the putative principal must have done something that would create in the patient's mind the reasonable belief that the doctors were acting on behalf of the defendant hospital." *Van Stelle v Macaskill*, 255 Mich App 1, 10; 662 NW2d 41 (2003); *Chapa*, 192 Mich App at 34. "[A]n independent relationship between a doctor and a patient that preceded a patient's admission to a hospital precludes a finding of ostensible agency, unless the acts or omissions of the hospital override the impressions created by the preexisting relationship and

create a reasonable belief that the doctor is an agent of the hospital." *Zdrojewski*, 254 Mich App at 66.

Here, as stated above, plaintiff had a preexisting relationship with Provenzano and St. Clair. Dado assumed the duties of Provenzano with respect to plaintiff's treatment. Plaintiff testified at his deposition that he did not know who employed Dado, but that no one ever indicated that Dado was a Davita employee; rather he testified that he formed the impression on his first day of dialysis that Dado was "[i]n charge of the clinic." Plaintiff testified that Dado never identified himself as a Davita employee and that Dado's white coat did not have a Davita decal or otherwise identify Dado as a Davita employee.

Plaintiff failed to demonstrate a genuine issue of material fact with respect to whether Dado was an ostensible agent of Davita. Although plaintiff argued that he did not have a preexisting relationship with Davita, he did not submit any other evidence to indicate that that Davita's actions created a reasonable belief in plaintiff that Dr. Dado was acting on behalf of Davita, at least insofar as it related to the provision of medical care, and thus failed to demonstrate a factual dispute with respect to whether Dr. Dado was an ostensible agent of Davita in that respect. *Van Stelle*, 255 Mich App at 10; *Chapa*, 192 Mich App at 34.

## C. CLAIMS AGAINST DAVITA NOT INVOLVING DADO

Finally, plaintiff argues that the trial court erred in dismissing his claims against Davita regarding Davita's liability for the negligence of Davita's agents and employees other than Dado, where Davita's motion for summary disposition did not address or seek dismissal of such claims. Plaintiff argues that his due process rights were violated by the trial court's dismissal of these claims because he did not have notice and a meaningful opportunity to be heard regarding their dismissal. We disagree.

Davita's motion for summary disposition requested that the trial court "dismiss Plaintiff's Complaint as to Defendant Davita in its entirety." In addition, at the summary disposition motion hearing, Davita argued that plaintiff did not properly allege claims against Davita arising from the conduct of anyone other than Dado because the only affidavit of merit filed was signed by a nephrologist. Thus, plaintiff had notice and an opportunity to be heard on these issues, and plaintiff has not shown that the dismissal of the claims violated his due process rights. See *Hinky Dinky Supermkt, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 579 (2004).

Furthermore, Davita properly argues that the claims based on the negligence of its agents or employees other than Dado were not supported by an affidavit of merit. Pursuant to MCL 600.2912d, a medical malpractice action must be supported by an affidavit of merit "signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness" under MCL 600.2169. A medical malpractice plaintiff is "required to submit an affidavit of an expert practicing or teaching in the same health care profession as those accused of wrongdoing." *Sturgis Bank & Trust Co v Hillsdale Comm Health Ctr*, 268 Mich App 484, 491-492; 708 NW2d 453 (2005). Here, plaintiff testified at his deposition that he was treated at Davita by Dado, an unnamed infectious disease physician, a physician's assistant, and a nurse; however the only affidavit of merit presented was signed by

Dr. Robert Luke, a nephrologist. Thus, any claims based on the alleged medical negligence of an individual other than Dado, the nephrologist, including negligence of Davita's agents and staff related to training, supervision, or failure to implement appropriate procedures for the administration of medical treatment, were not properly before the court because they were not supported by an affidavit of merit as required by MCL 600.2912d. See *Sturgis Bank & Trust Co*, 268 Mich App at 491-492; see also *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 428; 684 NW2d 864, 874 (2004). Further, although plaintiff argues that dismissal of those claims was improper because defendant's motion lacked any evidentiary support, Davita demonstrated in its motion for summary disposition the absence of appropriate affidavits of merit, and submitted with its reply brief the deposition testimony of Luke, wherein Luke stated that he was not an expert on what sort of procedures should be implemented for the monitoring of patients receiving Gentamicin, or the training and supervision of staff regarding such monitoring.

Plaintiff further argues that Davita's affidavit of merit challenge is untimely. MCR 2.112(L)(2) provides that, unless the court allows a later challenge for good cause, all challenges to an affidavit of merit "must be made by motion, filed pursuant to MCR 2.119, within 63 days of service of the affidavit on the opposing party." However, Davita did not challenge the sufficiency of the affidavit filed by Dr. Luke; instead, Davita properly argued that MCL 600.2912d should be applied to bar any claims not supported by an affidavit of merit. We agree, and therefore find that the trial court properly granted summary disposition to Davita on plaintiff's claims of negligence arising out of conduct by Davita's agents or employees other than Dado.

Affirmed.

/s/ Jane M. Beckering
/s/ Kathleen Jansen
/s/ Mark T. Boonstra