*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

DREW MOORE,

       Plaintiff-Appellee,

v

BEAUMONT HOSPITAL-DEARBORN, also
known as OAKWOOD HEALTHCARE, INC.,
formerly known as OAKWOOD HOSPITAL AND
MEDICAL CENTER,

       Defendant-Appellant.

UNPUBLISHED
June 16, 2022

No. 356788
Wayne Circuit Court
LC No. 18-009879-NH

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

In this medical malpractice case, defendant appeals by application for leave granted[1] the trial court's denial of its motion for partial summary disposition of plaintiff's ordinary negligence claims. Because we conclude the trial court erred when it denied defendant's motion, we reverse.

## I.  BASIC FACTS AND PROCEDURAL HISTORY

This case arises from an accident that occurred when plaintiff was injured while using the bathroom in defendant's hospital in Dearborn, Michigan (the "Hospital"). On September 26, 2016, plaintiff was admitted to the Hospital after experiencing pneumonia. While at the Hospital, plaintiff was intubated as a result of respiratory distress. Hospital staff identified plaintiff as having an increased risk of falling and, therefore, affixed a yellow arm band on him to alert other staff to plaintiff's fall risk.

On October 10, 2016, Paul Pardike, the manager of imaging services, injected plaintiff with a radioactive tracer in preparation for a stress test. While one of the imaging studies was being

---

[1] *Moore v Beaumont Hosp-Dearborn*, unpublished order of the Court of Appeals, entered May 6, 2021 (Docket No. 356788).

performed, plaintiff asked Pardike to use the bathroom. Plaintiff was offered the use of a bedpan to relieve himself but refused, insisting on using the toilet. Thus, Pardike wheeled plaintiff to the restroom door and, with the help of Mohammed Afana, a registered nurse at the Hospital, plaintiff was seated on the toilet and given an emergency pull cord. Plaintiff acknowledged that he understood how to use the cord, that he should not attempt to get up himself, and that he should pull the cord when he finished using the toilet. Plaintiff would not allow Pardike or Afana to remain in the bathroom with him while he was using it and was left alone in the bathroom with the door left ajar approximately 12 inches.

While Pardike was standing outside of the bathroom door, he asked plaintiff two or three times "how he was doing." Plaintiff responded "I'm good, not ready yet." After asking plaintiff for the fourth time if he was okay, plaintiff responded "I can't get up." When Pardike looked into the bathroom, he observed plaintiff on the floor, sitting on his buttocks with his legs out in front of him and his back against the wall. Plaintiff indicated that he was okay and that he did not hit his head. Pardike resumed the imaging studies and, once complete, left him for observation, where he appeared alert and uninjured.

On August 9, 2018, plaintiff filed a complaint against defendant in which he claimed he struck his head during the fall and suffered a subdural hematoma and subarachnoid hemorrhage. Plaintiff asserted that defendant committed malpractice by leaving him unattended in the bathroom, resulting in his head injury. Plaintiff subsequently amended his complaint to assert a claim of ordinary negligence in addition to the medical malpractice claim. On February 11, 2021, defendant moved for summary disposition of plaintiff's ordinary negligence claim, arguing that resolving plaintiff's allegations required consideration of medical judgment and, thus, sounding exclusively in medical malpractice.

The trial court ultimately disagreed with defendant's position, concluding defendant failed to satisfy its burden at summary disposition that plaintiff's claims sounded only in medical malpractice:

> [T]he problem is that the criteria is not it's the—whose responsibility it is because that would mean that a nurse could never be sued for ordinary negligence because it's always their responsibility. But that's not the way that *Bryant* [*v Oakpointe Villa Nursing Ctr*, 471 Mich 411; 684 NW2d 864 (2004),] even looks at it. It is whether an ordinary person could with that information in that particular case.
>
> So you get to the fact that, yes, it is their responsibility as a medical professional and a nurse. But in a case where someone comes in with a bracelet that says fall risk and they're unsteady on their feet, no matter what that nurse knows as an expert and professional. If that criteria alone, which is assessable by an ordinary person, could be used to make a decision that they didn't make correctly, could ordinary—is that ordinary negligence? And in the realm of a summary disposition motion, when the Court has to look at the evidence in the light most favorable to a nonmoving party. And that Court has already allowed them to amend their complaint to ordinary negligence, at this juncture I could do nothing but deny summary disposition without prejudice.

After the trial court entered its written order denying defendant's motion, defendant filed an application for leave to appeal with this Court, which was granted. This appeal followed.

## II. STANDARD OF REVIEW

Neither defendant's motion for summary disposition nor the trial court's order denying it identify the court rule under which defendant sought relief. However, the trial court considered facts outside of the pleadings, such as the deposition transcripts and interrogatory responses, when it denied defendant's motion. Accordingly, we will treat the motion as having been decided under MCR 2.116(C)(10). *Mitchell Corp of Owosso v Dep't of Consumer & Indus Servs*, 263 Mich App 270, 275; 687 NW2d 875 (2004).

"Whether a claim sounds in ordinary negligence or medical malpractice is a question of law that is reviewed de novo." *Trowell v Providence Hosp & Med Ctrs, Inc*, 502 Mich 509, 517; 918 NW2d 645 (2018). This Court also reviews de novo a trial court's decision on a motion brought under MCR 2.116(C)(10). *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion should only be granted if "there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

## III. ANALYSIS

On appeal, defendant argues the trial court erred when it denied defendant's motion for partial summary disposition because plaintiff's claims all require consideration of medical judgment and, therefore, sound exclusively in medical malpractice. We agree.

Not all acts by healthcare professionals involving medical care implicate medical malpractice. *Bryant*, 471 Mich at 421 ("The fact that an employee of a licensed health care facility was engaging in medical care at the time the alleged negligence occurred means that the plaintiff's claim may *possibly* sound in medical malpractice; it does not mean that the plaintiff's claim *certainly* sounds in medical malpractice.") (emphasis in original). In order to determine whether a claim sounds in medical malpractice on the one hand, or ordinary negligence on the other, courts must evaluate two factors: "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Id*. at 422. The failure to exercise medical judgment is understood as

> the failure of a member of the medical profession, employed to treat a case professionally, to fulfill the duty to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar

> locality, in light of the present state of medical science. [*Id*. at 424 (quotation marks and citations omitted).]

"If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions." *Id*.

*Trowell* and *Sturgis Bank & Trust v Hillsdale Community Health Ctr*, 268 Mich App 484; 708 NW2d 453 (2005), are instructive. In *Sturgis*, Tanya Walling was injured in an automobile accident and transported to the defendant hospital. *Sturgis*, 268 Mich App at 486. While hospitalized, Walling "fell out of her hospital bed and sustained a closed-head injury, brain damage, impaired cognitive functioning, and various other related injuries." *Id*. The plaintiff, Walling's limited conservator, subsequently filed suit, claiming the defendant "was negligent in failing to prevent Walling from falling out of her hospital bed, which could have been accomplished by proper monitoring and the use of bedrails, where hospital personnel were aware that Walling was in a physical and mental state that required heightened scrutiny in guarding against such an accident." *Id*. at 487. The defendant moved for partial summary disposition of the plaintiff's ordinary negligence claim on the grounds it sounded only in medical malpractice, which the trial court granted. *Id*. at 487-488.

On appeal, this Court affirmed. Stating that the case turned on the question of whether the plaintiff's claim raised questions of medical judgment, we concluded the allegations in the complaint, coupled with the expert deposition testimony offered by the parties, demonstrated that medical judgment was necessary to evaluate the plaintiff's claim:

> While, at first glance, one might believe that medical judgment beyond the realm of common knowledge and experience is not necessary when considering Walling's troubled physical and mental state, the question becomes entangled in issues concerning Walling's medications, the nature and seriousness of the closed-head injury, the degree of disorientation, and the various methods at a nurse's disposal in confronting a situation where a patient is at risk of falling. The deposition testimony indicates that there are numerous ways in which to address the risk, including the use of bed rails, bed alarms, and restraints, all of which entail to some degree of nursing or medical knowledge. Even in regard to bedrails, the evidence reflects that hospital bedrails are not quite as simple as bedrails one might find at home. In sum, we find that, although some matters within the ordinary negligence count might arguably be within the knowledge of a layperson, medical judgment beyond the realm of common knowledge and experience would ultimately serve a role in resolving the allegations contained in this complaint. [*Id*. at 498.]

*Trowell* is similarly persuasive. There, the plaintiff was admitted to the defendant hospital after suffering an aneurysm. *Trowell*, 502 Mich at 514. While at the hospital, the plaintiff required assistance using the bathroom and, on one occasion, a nurse's aide dropped the plaintiff twice while attempting to reach the bathroom. *Id*. After the plaintiff brought suit, the trial court granted summary disposition in favor of the defendant, concluding the claims sounded in medical malpractice and were, therefore, barred under the statute of limitations. *Id*. at 515-516. Ultimately, the Michigan Supreme Court concluded that while the allegations related to the number of aides attending to the plaintiff and the allegations regarding the plaintiff's *first fall* sounded in medical

malpractice, the plaintiff's allegations regarding the *second fall* sounded in ordinary negligence, because after the first fall, consideration of medical judgment was not necessary to evaluate the defendant's actions in the face of a known danger to the plaintiff. *Id*. at 521-524. The Court explained:

> Plaintiff's claim in this case regarding the second drop is analogous to the situation in *Bryant*. As in *Bryant*, the nurse's aide in this case discovered a danger when she attempted to move plaintiff and dropped her. After discovering this danger, the aide failed to take corrective action, such as calling for assistance or retrieving additional equipment to aid in moving plaintiff. Instead, the aide attempted the same action that had already failed and caused plaintiff injury—she tried again to move plaintiff unassisted. Like the situation described in *Bryant*, the aide in this case "recognize[d] that the resident's medical condition is such that [she] is likely to [fall] again," but the aide nevertheless failed to take corrective action. Plaintiff's complaint with regard to the second drop, viewed "in a light most favorable to the nonmovant," sets forth a claim that a jury "relying only on common knowledge and experience" could decide. [*Id*. at 522 (footnotes omitted).]

As in *Sturgis* and *Trowell*, we conclude plaintiff's claims sound exclusively in medical malpractice. In his amended complaint, plaintiff alleges that Pardike and Afana took him to the bathroom and, despite being a fall risk, left him on the toilet unattended. Plaintiff's expert, Regina Riggs, testified that Pardike and Afana's sole error was their failure to maintain constant visual contact with plaintiff while he was on the toilet.

The failure of Pardike and Afana to maintain constant visual contact with plaintiff while he used the toilet was, as explained in *Sturgis*, a failure to employ a "method[] at a nurse's disposal in confronting a situation where a patient is at risk of falling," which this Court has classified as requiring consideration of medical judgment. See *Sturgis*, 268 Mich App at 498. In other words, the practice of maintaining constant visual contact with a patient who insists on privacy while using the toilet is a method or technique used by medical staff to combat the danger of a patient from falling. And like the plaintiff's first fall in *Trowell*, 502 Mich at 523, which was predicated on an alleged "failure-to-properly-assist claim" and, therefore, "implicate[d] medical judgment because it require[d] consideration of plaintiff's individualized medical needs," plaintiff's claims implicate medical judgment because to address them, the trial court must assess plaintiff's individual diagnosis and characteristics, as well as whether the method used to supervise plaintiff was reasonable.

Moreover, this is not a case where defendant abandoned plaintiff in the face of a known danger. In *Harrier v Oakwood Skilled Nursing Ctr-Trenton*, unpublished per curiam opinion of the Court of Appeals, issued March 27, 2007 (Docket No. 273729),[2] a case upon which plaintiff relies, the plaintiff was admitted to the defendant care facility, where she "needed assistance for almost all personal care, including using the toilet." *Harrier*, unpub op at 2. The plaintiff fell and was injured after being "left unattended while she was using the toilet, notwithstanding that a nurse

---

[2] Although unpublished opinions may be considered for their persuasive value, they are not binding on this Court. *Eddington v Torres*, 311 Mich App 198, 203; 874 NW2d 394 (2015).

had instructed an aide to assist [the plaintiff] and to ensure that she was able to return to bed." *Id*. Concluding that the trial court erred when it determined the plaintiff's claim sounded only in medical malpractice, this Court held "no expert testimony is necessary to show that defendants acted negligently by failing to respond appropriately to the knowledge that [the plaintiff] was prone to falling, and that the aide was negligent by abandoning her patient in the face of that known danger." *Id*.

In contrast to *Harrier*, defendant here did not abandon plaintiff in the face of a known danger. When Pardike first learned plaintiff needed to use the bathroom, he offered plaintiff the use of a bed pan, knowing that plaintiff was a fall risk. When plaintiff refused, Pardike and Afana assisted plaintiff to the toilet seat. There, they instructed him not to get up and how to use the pull cord. Because plaintiff would not allow Pardike or Afana to remain in the bathroom with him, Pardike stood outside of the door to allow plaintiff some privacy. Pardike asked plaintiff at least two times before he fell if he was okay, to which plaintiff responded in the affirmative. These facts are quite distinct from those in *Harrier* where, despite knowing the plaintiff was a fall risk, she was left completely unattended to use the bathroom. Here, plaintiff was not left unattended; rather, he was attended to in all respects except that Pardike did not maintain constant visual contact with him.

Plaintiff also relies on *In re Kilburn Estate*, unpublished per curiam opinion of the Court of Appeals, issued May 20, 2021 (Docket No. 353525), which we find equally unpersuasive. There, the plaintiff was admitted to the defendant hospital after experiencing confusion and weakness. *In re Kilburn*, unpub op at 1. Although the plaintiff was observed using a cane and the plaintiff's family informed the defendant's staff that the plaintiff was weak on her feet, she was taken for x-rays without the use of her cane. *Id*. at 1-2. While standing for the procedure and without the aid of any assistance, the plaintiff fell backwards and hit her head. *Id*. at 2. On appeal, this Court affirmed the trial court's denial of the defendant's motion for summary disposition, concluding the plaintiff's claims properly sounded in ordinary negligence:

> Members of decedent's family testified that they told the triage nurse and attending ER physician that decedent needed a cane to stand and walk, and that decedent was a fall risk. Ommodt's [the x-ray technician] testimony was that the family told her that decedent needed the cane to walk because the decedent's legs were weak, but that decedent could stand. Ommodt testified that she made her own determination of the decedent's balance after talking to the family, asking the decedent whether she could stand, and observing the decedent move unaided in the CAT scan and x-ray rooms. Ommodt's decision to not have the decedent use her cane was not based on any special training, the application of a protocol, or medical assessment. Ommodt admitted that at the time, ERMC did not have a fall risk protocol in place. She did what any lay person would do; she spoke to the family and personally observed the decedent. Despite the decedent's weakness and confusion, once in the x-ray room, Ommodt did not take any additional medical precautions for this decedent. It appears that despite the assistive devices available, Ommodt performed the x-ray as normal, having the decedent raise her hands above her head. Ommodt admitted that she could have had someone stand behind the decedent, she could have had the decedent hold onto the bar that protruded from the ground, or had the decedent sit for the x-ray. A jury will be able to rely on common knowledge

and experience, just as Ommodt did, to evaluate whether Ommodt's decision was reasonable to reduce a known risk of imminent harm to one of its charges. [*Id*. at 10 (quotation marks, citation, and footnote omitted).]

In contrast to the plaintiff in *In re Kilburn*, who was unsteady and left on her feet during a medical procedure, plaintiff here was safely escorted to and seated on the toilet and instructed to stay seated until he was finished and he could be helped up. In other words, while the failure to take any preventative action with an unsteady patient may sound in ordinary negligence under *In re Kilburn*, the reasonableness of precautionary measures actually taken by medical staff sound under medical malpractice. Thus, unlike the plaintiff in *In re Kilburn*, plaintiff was not left in risk of imminent harm from a known danger.

Because plaintiff's allegations sound in medical malpractice, the trial court erred when it denied defendant's motion for partial summary disposition. We reverse the order of the trial court and remand for entry of an order granting defendant's motion. We do not retain jurisdiction. Defendant, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan