# STATE OF MICHIGAN

# COURT OF APPEALS

DEBRA POPRAVSKY and WALLACE
POPRAVSKY,

        Plaintiffs-Appellees,

v

BOTSFORD HOSPITAL, doing business as
BOTSFORD GENERAL HOSPITAL,
BOTSFORD HEALTH CARE and BEAUMONT
HEALTH, and NICOLE REED,

        Defendants-Appellants.

UNPUBLISHED
February 27, 2018

No. 335773
Oakland Circuit Court
LC No. 2015-149941-NO

Before: TALBOT, C.J., and METER and TUKEL, JJ.

PER CURIAM.

Defendants appeal by leave granted[1] an order denying defendants' motion for partial summary disposition and an order denying defendants' motion to compel an independent medical examination (IME). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

On May 3, 2013, plaintiff[2] Debra Popravsky was admitted to Botsford Hospital with nausea, vomiting, diarrhea, and abdominal pain. Once an admission assessment was completed, defendant Nicole Reed, the registered nurse assigned to plaintiff, performed a fall risk assessment revealing that plaintiff was at a low risk for falls. Upon plaintiff's admission, the treating physician ordered that she was to be on bedrest with assistance for bathroom privileges. She also was not to eat or drink anything by mouth. However, Shameka Hogains-West, a

---

[1] *Popravsky v Botsford Hosp*, unpublished order of the Court of Appeals, entered January 13, 2017 (Docket No. 335773).

[2] Because plaintiff Wallace Popravsky's claims are derivative of Debra's, our reference to "plaintiff" in this opinion will refer to Debra.

-1-

nursing assistant involved with plaintiff's care, testified that plaintiff was given something to drink by mouth once during her stay.

During an initial assessment by a nurse upon admission, plaintiff asked what she should do if she needed to access the restroom. Plaintiff recalled the nurse replying that plaintiff should not use a bedpan, as it was more desirable that she "get up and walk as much as possible." On May 4, 2013, Reed gave plaintiff a Braden scale test to determine—according to Reed's assessment, not the assessment of a physician—plaintiff's physical capabilities. Reed determined that plaintiff was capable of walking on occasion, with no limitation on her mobility. Throughout the day, plaintiff was documented moving to and from her bathroom with no indication as to whether she received any assistance. At no point were the physician's orders limiting plaintiff to bedrest with assisted bathroom privileges changed.

On May 5, 2013, shortly after midnight, Reed injected Zofran into plaintiff's IV tubing. Reed did not recall spilling any of this medication. Between 12:00 a.m. and 2:00 a.m., plaintiff fell when she got out of bed to use the restroom. She stated that when she put her feet on the floor, she immediately slipped on some liquid and "fell on [her] back, slammed [her] knee, and hit [her] head." Plaintiff did not see the liquid at any time prior to the fall. She testified that she did not know specifically where the alleged puddle was or the size of the puddle, but could recall that it was positioned somewhere "under—next to the bed." When asked about the details of the liquid, plaintiff was unable to provide any information.

Plaintiff filed a complaint against defendants alleging premises liability, ordinary negligence, medical malpractice (as an alternative to ordinary negligence), and res ipsa loquitur.[3] The trial date was set for November 28, 2016. Defendants moved for summary disposition of plaintiff's claims for premises liability, ordinary negligence, and res ipsa loquitur. Defendants argued, among other things, that plaintiff's claims sounded in medical malpractice. Defendants also filed a motion to compel plaintiff to submit to an IME.

The trial court held a hearing on these motions. With regard to defendants' motion for summary disposition, the trial court held:

> The Court has considered the arguments of counsel, the law. The Court will indeed hold off on the decision on res ipsa until after the close of proofs. The Court decrees that this case sounds in ordinary negligence, not medical malpractice. The Court is looking at the order of the doctor, bed rest with assistance, and the Court is of the adjudication that that beckons ordinary common understanding; it doesn't necessitate the solicitation of experts.
>
> So it's—it's ordinary negligence; that's what this Court's ruling is. The Court finds a question of fact on the premises liability; therefore, res ipsa lo—res

---

[3] A fifth count of "informed consent" was voluntarily dismissed and is not relevant to the issues on appeal.

ipsa remains, not as an independent cause of action, of course. Ordinary negligence remains. Premises liability remains.

Accordingly, in a written order, the trial court dismissed the medical malpractice count and denied defendants' motion for summary disposition on the other counts.

Regarding defendants' motion to compel plaintiff to submit to an IME, the trial court held, "The Court respectfully denies the motion for the IME. We're past the date. That's that."

## II. DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

Defendants argue that the trial court erred when it denied their motion for summary disposition of plaintiff's claims of premises liability, ordinary negligence, and res ipsa loquitur. We agree. Further, we conclude that the trial court erred when it determined that plaintiff's claims sounded in ordinary negligence and not medical malpractice. We thus reverse the order of the trial court and remand for proceedings consistent with this opinion as to the medical malpractice claim.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). Additionally, this Court reviews a trial court's determination to classify an action as ordinary negligence or medical malpractice de novo. *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 419; 684 NW2d 864 (2004). The issue of whether the doctrine of res ipsa loquitur is applicable to a particular case is a question of law, *Jones v Porretta*, 428 Mich 132, 154 n 8; 405 NW2d 863 (1987), which this Court also reviews de novo, *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008).

Motions for summary disposition under MCR 2.116(C)(10)[4] test the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When evaluating motions brought under this subrule, a trial court must consider, in the light most favorable to the nonmoving party, the parties' affidavits, pleadings, depositions, admissions, and other documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Dextrom*, 287 Mich App at 416. A motion is properly granted under this subrule if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Quinto*, 451 Mich at 362.

### A. PREMISES LIABILITY CLAIM

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). That is,

---

[4] Although defendants cited MCR 2.116(C)(7), (8), and (10) in their motion for summary disposition, on appeal they recognize that the proper court rule is MCR 2.116(C)(10).

[t]he landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. [*Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000).]

A hospital patient can be characterized as an invitee. *Turner v Northwest Gen Hosp*, 97 Mich App 1, 3; 293 NW2d 713 (1980). The landowner breaches the duty of care when it "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012).

As to physical dangers on the premises,

[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger. [*Stitt*, 462 Mich at 597.]

Defendants submit that plaintiff failed to put forward sufficient evidence to establish that defendants created the alleged puddle, knew of it, or should have known of it. We agree. The Michigan Supreme Court has stated that "[t]o establish a claim of premises liability, the plaintiff must be able to prove that the premises possessor had actual or constructive notice of the dangerous condition at issue." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 9; 890 NW2d 344 (2016) (quotation marks and citation omitted). However, the burden to prove that a defendant had notice remains with the plaintiff. *Id.* Indeed, the burden of proof belongs to a plaintiff to demonstrate that a defendant knew about the hazard or should have known of it because of the hazard's character or the duration of its presence. *Id.* at 11. Here, plaintiff admitted in her deposition that she never saw the puddle before the fall. She could not identify the liquid in any way, nor could she recall its location, when it appeared, how long it was left uncleaned, or its physical attributes. As such, there is no evidence to suggest that defendants knew or should have known of the alleged dangerous condition. As a result, the trial court erred when it failed to grant defendants' motion for summary disposition on this count.

Plaintiff's reliance on the testimony of Reed, the registered nurse assigned to plaintiff, and Hogains-West, a nursing assistant involved with plaintiff's care, is misplaced. Reed admitted that she administered Zofran to plaintiff's IV bag shortly before the fall. And Hogains-West stated that plaintiff was able to drink something before the fall, despite the physician's order that she was not to consume any food orally. Plaintiff put forward these statements as evidence that the puddle *may have* been created by spilled medication or drink. But these arguments are entirely speculative. Such speculation is not enough to survive a motion for summary disposition brought under MCR 2.116(C)(10). *Karbel v Comerica Bank*, 247 Mich App 90, 97-98; 635 NW2d 69 (2001).

B.  ORDINARY NEGLIGENCE AND MEDICAL MALPRACTICE

The trial court dismissed plaintiff's medical malpractice claim because it ruled that any negligence claim sounded in ordinary negligence.  We hold that the trial court erred because the alleged negligence sounds in medical malpractice.

Medical malpractice claims can be distinguished from claims of ordinary negligence in two ways:

> First, medical malpractice can occur only within the course of a professional relationship.  Second, claims of medical malpractice necessarily raise questions involving medical judgment.  Claims of ordinary negligence, by contrast, raise issues that are within the common knowledge and experience of the [fact-finder].  Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience.  If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions.  [*Bryant*, 471 Mich at 422 (quotation marks and citations omitted).]

In this case, the parties do not dispute that the claimed injury resulted in the course of a professional relationship.  What matters, then, is whether the issue involves a question of medical judgment beyond the realm of common knowledge and experience.  While a layperson may believe that a physician's orders to limit a patient to bedrest and assist her to the bathroom should be blindly and dutifully obeyed, this Court in *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr*, 268 Mich App 484, 498; 708 NW2d 453 (2005), has held:

> [A] nursing background and nursing experience are at least somewhat necessary to render a risk assessment and to make a determination regarding which safety or monitoring precautions to utilize when faced with a patient who is at risk of falling.  While, at first glance, one might believe that medical judgment beyond the realm of common knowledge and experience is not necessary when considering [plaintiff]'s troubled physical and mental state, the question becomes entangled in issues concerning [plaintiff]'s medications, the nature and seriousness of the . . . injury, the degree of disorientation, and the various methods at a nurse's disposal in confronting a situation where a patient is at risk of falling. . . .  [T]here are numerous ways in which to address the risk, . . . all of which entail some degree of nursing or medical knowledge. . . .  In sum, we find that, although some matters within the ordinary negligence count might arguably be within the knowledge of a layperson, medical judgment beyond the realm of common knowledge and experience would ultimately serve a role in resolving the allegations contained in this complaint.

Here, plaintiff alleges that she was encouraged by the nursing staff to ambulate without assistance.  Such encouragement is an expression of the medical judgment of the nurse that

plaintiff did not need assistance as determined by her physician. Indeed, it would be illogical to conclude that the decision to deviate from a physician's orders could be made by a layperson on the basis of common knowledge and experience.

Having established that the instant case sounds in medical malpractice and not ordinary negligence, it is apparent that the trial court should have granted defendants' motion for summary disposition of plaintiff's ordinary negligence claim. Accordingly, we reverse the trial court's denial of summary disposition on the ordinary negligence claim and reverse the trial court's dismissal of the medical malpractice claim, which was predicated on the court's erroneous conclusion that any claim of negligence sounded in ordinary negligence.

## C. RES IPSA LOQUITUR

Defendants also argue that the trial court should have dismissed plaintiff's res ipsa loquitur claim. With our disposition of plaintiff's ordinary negligence claim, this issue is primarily moot. However, we will clarify a couple things. First, res ipsa loquitur is not an independent cause of action. Instead, it is a doctrine that allows a plaintiff to receive "a permissible inference of negligence from circumstantial evidence." *Jones v Porretta*, 428 Mich 132, 150; 405 NW2d 863 (1987); see also 57B Am Jur 2d, Negligence, § 1176, p 419 ("According to most authorities, the doctrine of res ipsa loquitur is merely an evidentiary or procedural rule, and not a rule of substantive law, and thus it does not create or constitute an independent or separate ground of liability."). Thus, it allows a plaintiff to prove a claim of negligence through an alternative method under limited circumstances.[5] As such, dismissal of res ipsa loquitur as an independent claim is appropriate. Here, while the trial court did not dismiss this as a separate claim, it nevertheless properly understood that it is not an independent cause of action.[6] Regardless, the claim should have been dismissed because there is no basis for

---

[5] A plaintiff can obtain a permissible inference of negligence from circumstantial evidence only if the following four requirements are met:

> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
>
> (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;
>
> (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and
>
> (4) [e]vidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff. [*Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522 (2005) (quotation marks and citation omitted).]

an independent cause of action based on res ipsa loquitur. This dismissal does not preclude plaintiff from potentially relying on the doctrine for her medical malpractice claim, if she desires, assuming she can meet the requirements.[7]

Therefore, on remand, the trial court is to enter an order granting summary disposition in favor of defendants on plaintiff's counts related to premises liability, ordinary negligence, and res ipsa loquitur. Because the trial court erred when it determined that plaintiff's negligence count sounded in ordinary negligence, we reverse its dismissal of plaintiff's medical malpractice claim.

### III. DEFENDANTS' MOTION TO COMPEL IME

Defendants next argue that the trial court abused its discretion when it denied their motion to compel plaintiff to submit to an IME. We disagree.

This Court reviews a trial court's decision on a motion to compel an IME pursuant to MCR 2.311(A) for abuse of discretion. *Burris v KAM Transp, Inc*, 301 Mich App 482, 487; 836 NW2d 727 (2013). This standard acknowledges that there will be circumstances where there will not be a single correct result. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Indeed, a trial court abuses its discretion when it selects an outcome that falls outside the range of principled outcomes. *Id*.

MCR 2.311(A) provides:

When the mental or physical condition . . . of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician (or other appropriate professional) . . . . The order may be entered only on motion for good cause with notice to the person to be examined and to all parties.

"In the context of our court rules, '[g]ood cause simply means a satisfactory, sound or valid reason [.]' A trial court has broad discretion to determine what constitutes 'good cause.'" *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 264; 833 NW2d 331 (2013), quoting *People v Buie*, 491 Mich 294, 319; 817 NW2d 33 (2012). Because plaintiff brought a suit seeking damages for physical injuries, it appears on its face that defendants had good cause to request the IME. See *Burris*, 301 Mich App at 490 ("A plaintiff in a negligence action who

---

[6] When the trial court ruled that plaintiff's premises liability claim and her ordinary negligence claim survived summary disposition, it also stated that "res ipsa remains, not as an independent cause of action, of course."

[7] Although it seems unlikely that res ipsa loquitur would be of any help because plaintiff's allegation related to the medical malpractice claim mostly relates to the specific act that the nursing staff did not provide assistance when plaintiff went to the restroom in the middle of the night.

asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.") (quotation marks and citation omitted). Plaintiff, however, claims that good cause is wanting because, in this instance, all of plaintiff's treating physicians appear to be affiliated with defendant hospital. This fact could tend to indicate that defendants have the ability to obtain the desired medical information without resort to an IME, which suggests that an IME might be inappropriate. See *Schlagenhauf v Holder*, 379 US 104, 118; 85 S Ct 234; 13 L Ed 2d 152 (1964) ("The ability of the movant to obtain the desired information by other means is also relevant.").

However, regardless of whether good cause for the IME was established, we hold that the trial court did not abuse its discretion when it denied defendants' motion because the motion was untimely.

Plaintiff filed her complaint on November 12, 2015, and the deadline for discovery was subsequently set to be October 12, 2016. On June 24, 2016, defendants filed a request that plaintiff submit to an IME, which provided in part that "Defendants shall advise Plaintiffs of the names and locations of the examining physicians." On October 5, 2016, or seven days before discovery ended, defense counsel sent a letter to plaintiff's counsel indicating that a doctor was available to perform an IME on plaintiff on November 7, November 21, or November 28, 2016. The last of these dates was the date set for trial. On October 12, 2016, the day discovery ended, defendants moved to compel plaintiff to submit to the IME. The trial court denied the request because it was untimely.

The trial court's decision does not fall outside the range of principled outcomes. Although defendants requested that plaintiff submit to an IME on June 24, 2016, they did not follow up with plaintiff until over three months had elapsed, when discovery was nearly over. Moreover, the request for the IME was for one of three dates, all of which were after the October 12, 2016 close of discovery. Thus, under these circumstances, we cannot conclude that the trial court abused its discretion.

## IV. SCOPE OF RELIEF ON APPEAL

Our disposition of these issues requires that we determine whether any claim survives this appeal. Plaintiff did not cross-appeal the trial court's dismissal of the medical malpractice claim. As a general matter, "[i]n the absence of a cross appeal, errors claimed to be prejudicial to appellee cannot be considered nor may appellee have an enlargement of relief." *McCardel v Smolen*, 404 Mich 89, 95 n 6; 273 NW2d 3 (1978) (quotation marks and citation omitted). Thus, by ordering summary disposition as to the premises liability, ordinary negligence, and res ipsa loquitur claims, and absent some further order, all of plaintiff's claims will have been dismissed: the premises liability, ordinary negligence, and res ipsa loquitur claims by order of this court, and the medical malpractice claim by order of the trial court, which plaintiff did not appeal. As a result, we must consider the effect, if any, our order reversing the denial of summary disposition has on the medical malpractice claim.

The scope of the relief at issue in the present appeal is defined by the terms of the order granting leave to appeal. MCR 7.205(E)(4). The order granting leave to appeal states that the

appeal "is limited to the issues raised in the application and supporting brief." The application for leave to appeal, in turn, states as the first issue, "The trial court should have dismissed the 'premises liability', 'ordinary negligence', and *res ipsa loquitur*' claims, and allowed plaintiffs to proceed solely on a medical malpractice theory as medical malpractice was the only viable claim." Because defendants sought to appeal on the basis that a reversal of the trial court's order would result in a viable claim of medical malpractice and because leave to appeal was limited to issues raised in the application, our order reversing the denial of summary disposition necessarily has the effect of reviving the medical malpractice claim.

## V. CONCLUSION

We reverse the trial court's denial of defendants' motion for summary disposition with respect to the independent claims of premises liability, ordinary negligence, and res ipsa loquitur. For the reasons stated in Part IV of this opinion, we also reverse the trial court's dismissal of plaintiff's medical malpractice claim. However, we affirm the trial court's denial of defendants' motion to compel plaintiff to submit to an IME.

As a result, we remand for proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs, as neither party prevailed in full. MCR 7.219.

/s/ Michael J. Talbot
/s/ Patrick M. Meter
/s/ Jonathan Tukel