# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## TROWELL v PROVIDENCE HOSPITAL AND MEDICAL CENTERS, INC

Docket No. 154476. Argued on application for leave to appeal December 6, 2017. Decided July 23, 2018.

Audrey Trowell filed an action in the Wayne Circuit Court against Providence Hospital and Medical Centers, Inc., after she sustained injuries while she was hospitalized. Venue was later transferred to the Oakland Circuit Court by stipulation. The injuries from which Trowell's complaint arose resulted when an aide, acting alone, attempted to assist Trowell to the bathroom and dropped her twice during the process. Trowell did not serve Providence Hospital with a notice of intent to sue and failed to file the lawsuit within the two-year period of limitations generally applicable to medical malpractice actions. Providence Hospital moved for summary disposition under MCR 2.116(C)(7) (statute of limitations) and (C)(8) (failure to state a claim). The court, COLLEEN A. O'BRIEN, J., concluded that Trowell's lawsuit sounded in medical malpractice and granted summary disposition in favor of Providence Hospital. Trowell moved for reconsideration and to amend the complaint, and the court denied both motions. Trowell appealed, arguing that the claim was not filed as a medical malpractice action but rather as an ordinary negligence action, that medical expertise was not necessary for a jury to determine whether a hospital aide dropping a patient constituted ordinary negligence, and that summary disposition was premature because discovery had not yet been completed. The Court of Appeals, MURPHY, P.J., and STEPHENS and BOONSTRA, JJ., reversed and remanded the case, concluding that it was impossible to discern the nature of Trowell's claims without additional factual development. 316 Mich App 680 (2016). Providence Hospital applied for leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other peremptory action. 500 Mich 965 (2017).

In a per curiam opinion signed by Chief Justice MARKMAN and Justices ZAHRA, BERNSTEIN, and WILDER, the Supreme Court, in lieu of granting leave to appeal, *held*:

Neither party submitted materials beyond the complaint concerning the nature of the claims at issue in this case, and thus review was properly limited to the complaint alone, regardless of whether Providence Hospital's motion was examined under the standards applicable to (C)(7) motions, (C)(8) motions, or some combination of both standards. The Court of Appeals erred by ordering further discovery to determine the nature of Trowell's claims; the nature of Trowell's claims had to be ascertained from the complaint itself under the facts of the case. With the exception of Trowell's claim regarding the second time the aide dropped her, the

allegations in Trowell's complaint sounded in medical malpractice and thus were time-barred because the allegations involved matters of medical judgment in the course of Providence Hospital's professional relationship with Trowell and a jury was not likely to possess the knowledge and experience necessary to reach an informed decision as to those matters. However, Trowell's claim addressing the second drop sounded in ordinary negligence—a jury's common knowledge and experience was sufficient to inform its decision regarding the hospital employee's failure to take corrective action in the face of a known danger that had resulted in patient injury.

1. MCR 2.116(G)(5) states that when deciding a motion under MCR 2.116(C)(7), a court must consider, together with the pleadings, all documentary evidence then filed in the action or submitted by the parties but that review of a motion for summary disposition under MCR 2.116(C)(8) is limited to the pleadings. In this case, neither party submitted materials beyond the complaint regarding the nature of Trowell's claims and thus review was properly limited to the complaint alone. Therefore, the Court of Appeals erred by ordering further discovery to determine the nature of Trowell's claims.

2. A claim sounds in medical malpractice if the conduct on which the claim is based occurred in the context of a professional relationship and the claim raises questions of medical judgment beyond the common knowledge and experience of a jury. Trowell's complaint contained the following claims: (1) insufficient staff to assist Trowell; (2) improper physical handling of Trowell, which claim could be further divided into a claim related to the first time Trowell was dropped and a claim related to the second time Trowell was dropped; (3) failure to properly supervise; and (4) failure to properly train. With the exception of the claim regarding the second time Trowell was dropped, these claims all sounded in medical malpractice. Staffing decisions and patient monitoring involve questions of professional medical management. Properly assisting Trowell required consideration of her individualized medical needs. Properly supervising Trowell's care while she was in Providence Hospital was beyond the common knowledge and experience of an ordinary layman. For a jury to determine whether Providence Hospital had properly trained its staff would have required expert testimony to explain the proper methods of moving Trowell and to identify Trowell's individualized needs. Accordingly, all but one of Trowell's claims sounded in medical malpractice and were time-barred.

3. The first time the aide dropped Trowell sounded in medical malpractice because the context of moving Trowell under the circumstances required medical judgment involving an individualized assessment of Trowell's needs. The second drop sounded in ordinary negligence because a jury relying on common knowledge and experience could determine whether Providence Hospital was negligent for failing to take corrective action in response to a known danger—that is, for failing to call for assistance or to retrieve additional equipment to aid in Trowell's movement after Trowell was dropped and injured the first time. Instead of taking corrective action, the aide attempted the same action that had already failed and had injured Trowell. Trowell's complaint, as it related to the second drop, set forth a claim that a jury relying only on common knowledge and experience could decide, and therefore, the claim sounded in ordinary negligence.

Reversed and remanded.

Justice VIVIANO, joined by Justices MCCORMACK and CLEMENT, concurring, agreed with the majority that the nature of the claims in Trowell's complaint should have been determined on the basis of the complaint alone and that Trowell's complaint contained only one allegation of ordinary negligence. However, Justice VIVIANO disagreed with the majority's reasoning. The majority based its conclusion on the fact that none of the parties submitted any material to the court in the matter. The problem with this rationale was that it implied that determining the nature of a claim can be converted into a factual issue when a party submits evidence on the matter. *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411 (2004), charted a wayward course that permits consideration of facts outside the pleadings to decide what claims a plaintiff has asserted. However, under basic pleading principles, the nature of claims must be determined by the sufficiency of the pleadings, not by the sufficiency of the evidence. A trial court, when faced with a motion alleging untimely claims that also requires the court to determine the nature of the claims, must, under MCR 2.116(C)(8), make the latter determination solely by reference to the complaint. Once the nature of a claim has been established, the court must then determine whether the claim was timely under MCR 2.116(C)(7). When a motion for summary disposition is based on MCR 2.116(C)(7), MCR 2.116(G)(5) directs courts to consider then-filed documentary evidence outside the pleadings—affidavits, depositions, admissions, etc. The majority reads a prohibition into the rule—according to the majority, a court is prohibited from ordering further factual development to decide the motion. But MCR 2.116(G)(5) is a rule of inclusion, not exclusion. Nothing in the rule establishes that a court is prohibited from considering any other evidence. The majority's approach allows the factual record in a case to crystallize even when discovery has not yet been completed. In fact, the Supreme Court has taken the opposite tack in past cases dealing with motions subject to MCR 2.116(G)(5). In addition, summary disposition is often premature without sufficient factual development, and dismissal without further factual development when a question of fact related to recovery exists may be inappropriate. In addition, MCR 2.116(I)(3) authorizes an immediate trial on disputed issues of fact when a motion for summary disposition is based on MCR 2.116(C)(7), suggesting that MCR 2.116(G)(5) is not a prohibition on evidentiary development. In this case, discovery was incomplete—Trowell had not yet even deposed the aide who dropped her, and the aide would have likely been the central witness. The majority's outcome would prevent a court from considering the aide's testimony simply because Providence Hospital successfully filed its motion for summary disposition before the conclusion of discovery. When determining the nature of a complaint, review is properly limited to the complaint alone.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED July 23, 2018

STATE OF MICHIGAN

SUPREME COURT

AUDREY TROWELL,

Plaintiff-Appellee,

v

No. 154476

PROVIDENCE HOSPITAL AND
MEDICAL CENTERS, INC.,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

PER CURIAM.

At issue in this case is whether plaintiff's claims sound in medical malpractice or ordinary negligence. If her claims sound in medical malpractice, then they are barred by the two-year statute of limitations applicable to medical malpractice actions and defendant is entitled to summary disposition under MCR 2.116(C)(7). If her claims sound in ordinary negligence, then they are timely. The Court of Appeals held that it could not "conclude solely on the basis of the allegations in the complaint . . . that

plaintiff's claims sounded in medical malpractice."[1] It then remanded for an evidentiary hearing to determine whether plaintiff's claims sounded in medical malpractice, ordinary negligence, or both. We disagree with this approach. We hold that under the facts of this case, in which the only material submitted to the trial court was plaintiff's complaint, the remand was improper and in determining the nature of plaintiff's claims, the lower courts' review was limited to the complaint alone. A proper review of the allegations in plaintiff's complaint leads us to conclude that although the complaint includes some claims of medical malpractice, it also contains one claim of ordinary negligence. Accordingly, we reverse the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff brought the present lawsuit on February 11, 2014, after sustaining injuries at defendant hospital. Three years earlier, on February 11, 2011, plaintiff was admitted to the intensive care unit (ICU) at defendant hospital after an aneurysm caused her to suffer a stroke and subsequently go into cardiac arrest. While in the ICU, she needed assistance to use the restroom. Her complaint alleges that an aide named Dana, acting alone, tried to move her to the bathroom and dropped plaintiff twice during the process. Specifically, the complaint alleges:

> 11. Although "Dana" was tasked with assisting Plaintiff with using the bathroom, she dropped Plaintiff, which caused Plaintiff to hit her head on her wheelchair.

---

[1] *Trowell v Providence Hosp & Med Ctrs, Inc*, 316 Mich App 680, 702; 893 NW2d 112 (2016).

12. "Dana" attempted to assist Plaintiff again after dropping her, but instead she dropped Plaintiff a second time.

13. As a result of her falls, Plaintiff suffered a torn rotator cuff which has required multiple surgeries, and treatment continues into the present time.

14. Further, an MRI revealed that Plaintiff had suffered bleeding on the brain as a result of being dropped by Defendant's nurse, "Dana."

15. Defendant hospital was negligent in one or more of the following particulars, departing from the standard of care in the community:

a. Failure to ensure the safety of Plaintiff while in Defendant's hospital;

b. Failure to properly supervise the care of Plaintiff while in Defendant's hospital;

c. Failure to provide an adequate number of nurses to assist Plaintiff while in Defendant's hospital;

d. Failure to properly train "Dana" and other nurses in how to properly handle patients such as Plaintiff;

e. Failure to exercise proper care to prevent Plaintiff from being injured while in Defendant's hospital[.]

16. Defendant hospital was negligent through its agents, employees, and staff in failing to ensure the safety of Plaintiff.

17. The negligence of Defendant and its agents, employees and staff was the proximate [cause] of Plaintiff's damages set forth below.

On January 9, 2015, after the parties had the opportunity to engage in more than 10 months of discovery but before discovery closed, defendant moved for summary disposition under MCR 2.116(C)(7) and (C)(8), arguing that plaintiff's claims sound in medical malpractice and thus are barred by the two-year statute of limitations applicable

3

to medical malpractice claims.[2]   That period is tolled when a plaintiff serves the defendant with a notice of intent to sue,[3] which is required by MCL 600.2912b(1).  But in this case, plaintiff never served a notice of intent to sue, and consequently the limitations period was never tolled.[4]   Thus, according to defendant, the complaint was untimely because it was filed more than two years after the claims accrued.  In response, plaintiff argued that her complaint does not allege medical malpractice claims, but instead alleges ordinary negligence claims.

The trial court granted summary disposition to defendant on April 8, 2015, holding that plaintiff's claims sound in medical malpractice, not ordinary negligence, because the claims involve a professional relationship between plaintiff and defendant and concern questions of defendant's medical judgment.[5]

The Court of Appeals reversed and remanded.[6]   Its analysis was based on the distinctions between medical malpractice and ordinary negligence claims set forth by this

---

[2] See MCL 600.5805(8).

[3] MCL 600.5856(c).

[4] Defendant also alleged that plaintiff had failed to file an affidavit of merit, MCL 600.2912d(1), which is another procedural prerequisite of a medical malpractice suit.

[5] Plaintiff subsequently filed a motion for reconsideration and a motion to file an amended complaint.  The proposed complaint changes the title of the sole count from "medical negligence" to "negligence."  It also drops all but one of the claims made in ¶ 15 of the original complaint, keeping only the allegation that defendant hospital was negligent in "[failing] to ensure the safety of Plaintiff while in Defendant's hospital." The trial court denied these motions.

[6] *Trowell*, 316 Mich App at 703.

Court in *Bryant v Oakpointe Villa Nursing Ctr, Inc*.[7]  In applying *Bryant*, the Court of Appeals noted that it was "confined to examining the allegations in plaintiff's complaint," but the "complaint is fairly vague and lacks elaboration in terms of describing and factually supporting the particular theories of negligence it sets forth, ostensibly because plaintiff was short on information concerning details of the incident . . . ."[8]  The Court observed that, based on the language of plaintiff's complaint, all of plaintiff's allegations could involve matters of medical judgment in the course of a professional relationship with defendant and thus constitute medical malpractice claims.[9]  But the Court thought that plaintiff's allegations could also be consistent with factual scenarios involving ordinary negligence.  The Court determined that, without additional evidence, it was impossible to discern the nature of plaintiff's claims.[10]  Accordingly, the Court of Appeals reversed the trial court's order granting summary disposition to defendant and remanded to the trial court for further factual development of the nature of plaintiff's claims as pleaded in her complaint.[11]

---

[7] *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 422; 684 NW2d 864 (2004).

[8] *Trowell*, 316 Mich App at 695.

[9] *Id*. at 698, 700-701.

[10] *Id*. at 702.

[11] *Id*. at 702-703.

Citing *Bryant*, we ordered oral argument on defendant's application for leave to appeal, directing the parties to address "whether the claims in the plaintiff's complaint sound in ordinary negligence or medical malpractice[.]"[12]

## II. STANDARD OF REVIEW

Whether a claim sounds in ordinary negligence or medical malpractice is a question of law that is reviewed de novo.[13]

## III. ANALYSIS

A medical malpractice claim is sometimes difficult to distinguish from an ordinary negligence claim.[14] But the distinction is often critical.[15] In this case, defendant contended in its motion for summary disposition brought under MCR 2.116(C)(7) and (C)(8) that while plaintiff framed her claims as a "general negligence action," they "actually sound in medical malpractice" and are barred by the applicable statute of limitations. Plaintiff has argued that her claims are for ordinary negligence.

The Court of Appeals concluded in this case that "the allegations in the complaint

---

[12] *Trowell v Providence Hosp & Med Ctrs, Inc*, 500 Mich 965 (2017).

[13] *Bryant*, 471 Mich at 419.

[14] See, e.g., *Chase v Sabin*, 445 Mich 190, 197; 516 NW2d 60 (1994) ("While the plaintiff's claim [against the hospital] lies in negligence, the essence of the hospital's alleged wrong is substantially similar to medical malpractice."), reversed on other grounds by *Trentadue v Buckler Lawn Sprinkler Co*, 479 Mich 378, 392-393; 738 NW2d 664 (2007).

[15] See *Bryant*, 471 Mich at 422 (explaining how to determine whether a claim sounds in medical malpractice or ordinary negligence and noting that medical malpractice claims are subject to certain substantive and procedural requirements).

did not lend themselves to a definitive determination that the negligence claims in plaintiff's suit necessarily sounded in medical malpractice," and the panel therefore remanded to the trial court for further proceedings.[16] Defendant disagrees with this approach, arguing that because it moved for summary disposition under MCR 2.116(C)(7) and (C)(8), the court's review of "allegations in [plaintiff's] Complaint" was restricted "to the four corners of said Complaint." Implicit in this argument is the premise that a remand to the trial court is unnecessary because that court was limited to reviewing the complaint alone when deciding defendant's motion for summary disposition.

A court is permitted to consider materials outside the pleadings when deciding a motion under MCR 2.116(C)(7).[17] In contrast, "[o]nly the pleadings may be considered when the motion [for summary disposition] is based on subrule (C)(8) . . . ."[18] We need not decide in this case whether the trial court was required to look only to the complaint in reviewing defendant's motion or whether it could have looked to other submitted evidence in ascertaining the nature of plaintiff's claims. This is because, under MCR 2.116(G)(5), "[t]he affidavits, together with the pleadings, depositions, admissions, and documentary evidence *then filed in the action or submitted by the parties*, must be

---

[16] *Trowell*, 316 Mich App at 683.

[17] See MCR 2.116(G)(5) and (G)(6). See also *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994) (noting that in deciding a motion under MCR 2.116(C)(7), "the contents of the complaint must be accepted as true unless specifically contradicted by the affidavits or other appropriate documentation submitted by the movant").

[18] MCR 2.116(G)(5).

7

considered by the court when the motion is based on subrule (C)(1)-(7) or (10)."[19]  In this case, neither party submitted materials beyond the complaint concerning the nature of the claims, and thus review is properly limited to the complaint alone, regardless of whether defendant's motion is examined under the standards applicable to (C)(7) motions, (C)(8) motions, or some combination of both standards.[20]

The Court of Appeals therefore erred by ordering further discovery to determine the nature of plaintiff's claims, which must be ascertained from the complaint itself under the facts of this case.  As with any such review of a complaint, "[a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant."[21]  And we disregard the labels given to the claims and instead read the complaint as a whole, seeking the gravamen of the claims.[22]

## IV.  APPLICATION

The question remains as to what theory (or theories) plaintiff's complaint actually sounds in.  The Court of Appeals identified two claims in plaintiff's complaint—"(1) the use of one nurse's aide to assist plaintiff and not two aides or nurses and (2) the manner in which the nurse's aide physically handled plaintiff when providing assistance, regardless of the number of hospital personnel involved."[23]  Regarding the second claim,

---

[19] Emphasis added.

[20] See *Patterson*, 447 Mich at 432 ("A motion under MCR 2.116(C)(7) *may* be supported by affidavits, depositions, admissions, or other documentary evidence.").

[21] *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

[22] *Altobelli v Hartmann*, 499 Mich 284, 303; 884 NW2d 537 (2016).

[23] *Trowell*, 316 Mich App at 696-697.

the Court of Appeals further distinguished the first time the aide dropped plaintiff from the second time the aide dropped plaintiff. The Court explained that the second drop was potentially distinguishable because under *Bryant*, the failure to take corrective action once a risk is evident does not implicate medical judgment.[24] The Court of Appeals remanded the two claims for further factual development to determine whether they sound in ordinary negligence or medical malpractice. In addition to the claims identified by the Court of Appeals, two other claims are apparent in plaintiff's complaint: the "failure to properly supervise" and the "failure to properly train."[25] We will address each claim in turn.

With regard to the second drop of plaintiff, our Court considered an almost identical situation in *Bryant*. In that case, the hospital staff found the plaintiff tangled in her bedding.[26] After discovering this dangerous condition, the staff failed to take corrective action to prevent the condition from recurring.[27] We held that this failure to take corrective action did not implicate medical judgment.[28] We explained:

> This claim sounds in ordinary negligence. No expert testimony is

---

[24] See *Bryant*, 471 Mich at 430-431.

[25] These two claims are distinguishable from the two categories identified by the Court of Appeals because the failure to train and the failure to supervise concern the hospital's direct liability. By contrast, the failure to use two or more nurses and the failure to properly assist plaintiff both concern the hospital's vicarious liability for the aide's negligence.

[26] *Bryant*, 471 Mich at 430.

[27] *Id*.

[28] *Id*.

9

necessary to determine whether defendant's employees should have taken *some* sort of corrective action to prevent future harm after learning of the hazard. The fact-finder can rely on common knowledge and experience in determining whether defendant ought to have made an attempt to reduce a known risk of imminent harm to one of its charges.[29]

Our Court also offered the following hypothetical scenario:

> Suppose, for example, that two CENAs [certified evaluated nursing assistants] employed by defendant discovered that a resident had slid underwater while taking a bath. Realizing that the resident might drown, the CENAs lift him above the water. They recognize that the resident's medical condition is such that he is likely to slide underwater again and, accordingly, they notify a supervising nurse of the problem. The nurse, then, does nothing at all to rectify the problem, and the resident drowns while taking a bath the next day.[30]

In such a scenario, we explained, a jury relying on common knowledge and experience could determine whether the defendant was negligent for failing to take corrective action in response to a known danger.[31] Thus, a claim based upon such a scenario sounds in ordinary negligence rather than medical malpractice.

Plaintiff's claim in this case regarding the second drop is analogous to the situation in *Bryant*. As in *Bryant*, the nurse's aide in this case discovered a danger when she attempted to move plaintiff and dropped her. After discovering this danger, the aide failed to take corrective action, such as calling for assistance or retrieving additional equipment to aid in moving plaintiff. Instead, the aide attempted the same action that had already failed and caused plaintiff injury—she tried again to move plaintiff unassisted.

---

[29] *Id.* at 430-431.

[30] *Id.* at 431.

[31] *Id.*

Like the situation described in *Bryant*, the aide in this case "recognize[d] that the resident's medical condition is such that [she] is likely to [fall] again,"[32] but the aide nevertheless failed to take corrective action. Plaintiff's complaint with regard to the second drop, viewed "in a light most favorable to the nonmovant,"[33] sets forth a claim that a jury "relying only on common knowledge and experience"[34] could decide.

As for plaintiff's remaining claims, however, each sounds in medical malpractice. When we considered similar claims, both in *Bryant* and in *Dorris v Detroit Osteopathic Hosp Corp*,[35] on which *Bryant* relied, we determined that such claims implicate medical judgment. Related to the failure to use more than one person to move plaintiff, *Dorris* considered a claim of inadequate staffing and held that "these allegations concerning staffing decisions and patient monitoring involve questions of professional medical management and not issues of ordinary negligence that can be judged by the common knowledge and experience of a jury."[36] Similarly, in this case, plaintiff's claim that defendant failed "to provide an adequate number of nurses to assist Plaintiff while in Defendant's hospital" implicated medical judgment and thus sounded in medical malpractice.

---

[32] *Id.*

[33] *Maiden*, 461 Mich at 119.

[34] *Bryant*, 471 Mich at 431.

[35] *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26; 594 NW2d 455 (1999).

[36] *Id.* at 47.

11

Plaintiff's failure-to-properly-assist claim is analogous to the "failure to inspect" claim considered in *Bryant*. In *Bryant*, we held that the failure to recognize the risks of asphyxiation associated with a patient's bedding implicates medical judgment because it requires an individualized assessment of the patient's medical needs.[37] In the same way, in this case, we hold that the claim that the aide failed to properly assist plaintiff while she was in the ICU implicates medical judgment because it requires consideration of plaintiff's individualized medical needs.

Regarding plaintiff's allegation in the complaint that defendant failed "to properly supervise the care of Plaintiff while in Defendant's hospital," *Dorris* considered a similar claim in the context of a psychiatric ward and held that "[t]he ordinary layman does not know the type of supervision or monitoring that is required for psychiatric patients in a psychiatric ward."[38] Similarly, in this case, a jury could not determine, relying merely on "common knowledge and experience,"[39] what would constitute proper supervision for a patient like plaintiff, who was admitted to the ICU after suffering an aneurysm, a stroke, and cardiac arrest.

Finally, regarding plaintiff's allegation in the complaint that defendant failed "to properly train 'Dana' and other nurses in how to properly handle patients such as Plaintiff," *Bryant* considered a claim of failure to train hospital staff on how to avoid

---

[37] *Bryant*, 471 Mich at 429.

[38] *Dorris*, 460 Mich at 47.

[39] *Bryant*, 471 Mich at 423.

asphyxiation from improperly situated bedding.[40]  We analogized to the failure-to-supervise claim in *Dorris* and held that assessing risks such as asphyxiation from bedding for purposes of proper supervision requires specialized knowledge of hospital bedding arrangements and of a patient's individual needs.[41]  Thus, we held that the claim implicated medical judgment.[42]  In this case, the same principles apply.  To determine whether the hospital provided proper supervision in the ICU for a patient such as plaintiff, a jury would need to hear expert testimony regarding proper methods of moving a patient, as well as the patient's individualized needs.  Thus, the claim implicates medical judgment and sounds in medical malpractice.

Having reached these conclusions, we again note, as we did in *Bryant*, that "in future cases of this nature, in which the line between ordinary negligence and medical malpractice is not easily distinguishable, plaintiffs are advised as a matter of prudence to file their claims alternatively as medical malpractice and ordinary negligence within the applicable period of limitations."[43]

---

[40] *Id*. at 426.

[41] *Id*. at 427-428.

[42] *Id*. at 428.

[43] *Id*. at 432-433.  In *Bryant*, we added:

> If the trial court thereafter rules that the claim sounds in ordinary negligence and not medical malpractice, and may thus proceed in ordinary negligence, and this ruling is subsequently reversed on appeal, the plaintiff will nonetheless have preserved the right to proceed with the medical malpractice cause of action by having filed in medical malpractice within the period of limitations.  [*Id*. at 433 n 19.]

## V. CONCLUSION

Under these facts, when the only material submitted to the court was plaintiff's complaint, the Court of Appeals erred by remanding this case for an evidentiary hearing to determine the nature of plaintiff's claims. When plaintiff's complaint is read properly, she has stated only one claim of ordinary negligence—the claim regarding the second drop. As stated in the complaint, the other claims sound in medical malpractice, and thus those other claims are time-barred. Accordingly, we reverse the Court of Appeals' judgment and remand to the trial court for proceedings consistent with this opinion.

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Kurtis T. Wilder

14

STATE OF MICHIGAN

SUPREME COURT

AUDREY TROWELL,

      Plaintiff-Appellee,

v                                    No. 154476

PROVIDENCE HOSPITAL AND
MEDICAL CENTERS, INC.,

      Defendant-Appellant.

_____

VIVIANO, J. (*concurring in result only*).

I concur in the majority's holding, namely, that when determining the nature of plaintiff's claim, the lower courts' review was properly limited to the complaint alone. But I do not agree with the majority's reasoning and fear it will have negative consequences. I write to explain why.[1]

## I. BACKGROUND

Defendant moved for summary disposition under MCR 2.116(C)(7) and (C)(8), arguing that plaintiff's claims (1) sounded in medical malpractice and (2) were barred by the statute of limitations applicable to such claims.[2] In response, plaintiff did not contest the latter portion of the motion; instead, she argued that her complaint alleges ordinary

_____

[1] I also agree with the majority that, when read properly, plaintiff's complaint states only one claim of ordinary negligence—the claim regarding the second drop. So I will not address this issue further.

[2] See MCL 600.5805(8).

negligence claims that are not time-barred. Thus, the only issue in dispute is the nature of the claims asserted in plaintiff's complaint, i.e., do they sound in medical malpractice or ordinary negligence?

But to resolve this question, a court must know what materials to consider—the pleadings alone, or the pleadings *and* the evidence submitted by the parties. The Court of Appeals treated the question of the nature of a claim as a factual issue and therefore remanded the case for evidentiary development. The majority in this Court purports to reject this approach and holds that a remand for further factual development is inappropriate because, in this particular case, defendant did not submit documentary evidence in support of its motion and plaintiff did not submit any with its response. The problem with this rationale, however, is that it implies that determining the nature of a claim can be converted into a factual issue whenever a party submits evidence on the matter. Thus, the majority, like the Court of Appeals, leaves the door open to determining the legal nature of a claim in a complaint by reference to the factual record.[3]

I believe the confusion in this case results from our decision in *Bryant v Oakpointe Villa Nursing Ctr, Inc*.[4] There, drawing on the standards set forth in *Dorris v Detroit Osteopathic Hosp Corp*,[5] we reiterated the test for determining whether a claim sounds in

---

[3] Despite noting that defendant cited both MCR 2.116(C)(7) *and* (C)(8) in support of its motion for summary disposition, the Court of Appeals panel, like the majority here, only addressed the motion under MCR 2.116(C)(7). For the reasons below, I believe both rules are applicable to motions of this type.

[4] *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411; 684 NW2d 864 (2004).

[5] *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26; 594 NW2d 455 (1999).

2

medical malpractice: medical malpractice claims can only arise in the course of a professional relationship and necessarily raise questions involving medical judgment, whereas ordinary negligence claims raise issues within the realm of common knowledge and experience.[6]

Applying *Dorris* to the various theories alleged in the plaintiff's complaint, this Court in *Bryant* did not limit its review to the plaintiff's complaint. Instead, we considered the deposition testimony of the plaintiff's expert, an article the expert coauthored, and the testimony of certain other witnesses.[7] Indeed, at one point, we made an explicit reference to the record in making our determination.[8] Shortly after *Bryant* was decided, the Court of Appeals followed suit in a published opinion in *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr*.[9] Notably, however, in *Gregory v Heritage Hosp*, the companion case to *Dorris*, this Court's review was limited to the allegations in the plaintiff's complaint.[10]

---

[6] See *Bryant*, 471 Mich at 422, citing *Dorris*, 460 Mich at 45-46 (explaining that "*Dorris* is central to our analysis").

[7] *Bryant*, 471 Mich at 427-430.

[8] *Id*. at 429 ("It is clear from the record in this case . . . ."). We also stated in a footnote that "[t]he court must examine the particular factual setting of the plaintiff's claim in order to determine whether the circumstances—for example, the medical condition of the plaintiff or the sophistication required to safely effect the move—implicate medical judgment as explained in *Dorris*." *Id*. at 421 n 9.

[9] See *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr*, 268 Mich App 484, 497-498; 708 NW2d 453 (2005) (reviewing documentary evidence and deposition testimony to determine whether the plaintiff's claim sounded in medical malpractice or ordinary negligence).

[10] *Dorris*, 460 Mich at 45-48.

3

I believe that *Bryant* charted a wayward course that was followed in *Sturgis* and by the Court of Appeals panel in this case. I would reject this mode of analysis, which permits consideration of facts outside the pleadings to decide what claims a plaintiff is asserting. The nature of a claim does not depend on the sufficiency of the evidence, it depends on the sufficiency of the pleadings. As discussed below, I believe our court rules chart a simpler course for motions like the one at issue in this case. A court should address the question of whether the complaint sounds in medical malpractice or ordinary negligence under MCR 2.116(C)(8), because that rule is tailored to questions regarding the sufficiency of a pleading.[11] Once that task is accomplished, the court must then determine whether the claim or claims in the complaint were timely, a determination properly made under MCR 2.116(C)(7).

## II. DETERMINING THE NATURE OF A CLAIM UNDER MCR 2.116(C)(8)

Defendant's motion for summary disposition in this case does not simply argue that the plaintiff's claim is time-barred. Rather, defendant's motion first seeks a determination of the nature of the claims that plaintiff has asserted, i.e., it argues that plaintiff's complaint sounds in medical malpractice, not ordinary negligence.[12] This is

---

[11] In *Bryant*, 471 Mich at 419, we may also have created some confusion when we stated that "[i]*n determining whether the nature of a claim is ordinary negligence or medical malpractice,* as well as whether such claim is barred because of the statute of limitations, a court does so under MCR 2.116(C)(7)." (Emphasis added.) The italicized portion of this quotation, however, finds no support in the text of the court rule because MCR 2.116(C)(7) does not, by its terms, apply to a determination of the nature of a claim. For the reasons discussed in the text, I do not think this is a correct statement of the law in this area and would therefore disavow it.

[12] See *Belleville v Hanby*, 152 Mich App 548, 551; 394 NW2d 412 (1986) (noting, in a case determining the applicable statute of limitations, that a court must "see exactly what

4

another way of saying that plaintiff's complaint does not state a claim for ordinary negligence. And to answer this question, the court must assess the complaint under MCR 2.116(C)(8), which permits motions for summary disposition on the ground that "[t]he opposing party has failed to state a claim on which relief can be granted."[13] Unlike motions under MCR 2.116(C)(7), "[o]nly the pleadings may be considered when the motion [for summary disposition] is based on subrule (C)(8) . . . ."[14]

The proper analysis of the nature of a plaintiff's claim, then, relies on basic pleading principles. We are "committed to the notice theory of pleading," which means that the function of the complaint is to provide the opposing party with notice of the claims being lodged against it.[15] Accordingly, our court rules require that a complaint provide "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend"[16]

---

a party's complaint is before deciding whether it should be barred").

[13] See also *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) ("A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant.").

[14] MCR 2.116(G)(5).

[15] *Baker v Gushwa*, 354 Mich 241, 246; 92 NW2d 507 (1958); see also *Olson v Dahlen*, 3 Mich App 63, 72; 141 NW2d 702 (1966) ("[T]he function of the pleadings is to act as a guide rope, not as a snare or a hangman's noose.").

[16] MCR 2.111(B)(1); see also *Eberbach v Woods*, 232 Mich 392, 396; 205 NW 174 (1925) ("The purpose of a declaration is to inform the defendant of the nature of plaintiff's claim.").

and that all claims against an opposing party arising out of those facts must be included in the complaint against that party.[17] Thus, our courts have historically held that "the gravamen of an action is determined by reading the complaint as a whole . . . ."[18] That is, we determine the nature of a claim by looking to what type of claim "the complaint sounds in."[19] As this Court has noted, "It is well accepted that in ruling on a statute of limitations defense the court may look behind the technical label that plaintiff attaches to a cause of action to the substance of the claim asserted."[20] And courts in this state and

---

[17] MCR 2.203(A).

[18] *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007); see also *Altobelli v Hartmann*, 499 Mich 284, 303; 884 NW2d 537 (2016) ("In considering the gravamen of plaintiff's complaint, we examine the entire claim, looking beyond procedural labels to determine the exact nature of the claim."); *Adkins v Annapolis Hosp*, 116 Mich App 558, 563; 323 NW2d 482 (1982) ("The gravamen of an action is determined by reading the claim as a whole."), citing *Smith v Holmes*, 54 Mich 104; 19 NW 767 (1884); 1 Am Jur 2d, Actions, § 7, p 824 ("As also stated, whether a claim sounds in tort or contract is determined by the nature and substance of the facts alleged in the pleadings."); 1A CJS, Actions, § 102, p 374 ("To determine the nature of an action, a court must examine and construe a complaint's essential and factual allegations by which the plaintiff requests relief, rather than the legal terminology utilized in the complaint or the form of a pleading.").

[19] See, e.g., *Dennis v Robbins Funeral Home*, 428 Mich 698, 705; 411 NW2d 156 (1987) ("[T]he complaint sounds in negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress."); *Wheeler v Iron Co Rd Comm*, 173 Mich App 542, 544; 434 NW2d 188 (1988) ("Plaintiffs' complaint sounds in premises liability."); *Lockwood v Mobile Med Response, Inc*, 293 Mich App 17, 26; 809 NW2d 403 (2011) ("[P]laintiff's complaint sounds in medical malpractice, not ordinary negligence."); see also *Parkwood Ltd Dividend Housing Assoc v State Housing Dev Auth*, 468 Mich 763, 771-772; 664 NW2d 185 (2003) (determining the nature of the claim by examining plaintiff's complaint).

[20] *Local 1064, RWDSU AFL-CIO v Ernst & Young*, 449 Mich 322, 327 n 10; 535 NW2d 187 (1995).

others have used this mode of analysis—examining the complaint to determine the nature of the claim—to decide whether a plaintiff has stated a claim of ordinary negligence or medical malpractice in cases involving the statute of limitations defense and the other statutory medical malpractice requirements.[21]

---

[21] See *Kambas v St. Joseph's Mercy Hosp of Detroit*, 389 Mich 249, 250-252; 205 NW2d 431 (1973) (examining the complaint to determine that certain allegations sounded in ordinary negligence, not medical malpractice, and thus the medical malpractice statute of limitations was inapplicable); *Bronson v Sisters of Mercy Health Corp*, 175 Mich App 647, 648-650, 654; 438 NW2d 276 (1989) (holding, after examining the complaint alone in a case deciding an MCR 2.116(C)(7) motion, that the plaintiff's complaint sounded in medical malpractice); *McLeod v Plymouth Court Nursing Home*, 957 F Supp 113, 115 (ED Mich, 1997) (holding that a complaint stated a claim for ordinary negligence, not medical malpractice, by examining the gravamen of the complaint alone); *Gunter v Laboratory Corp of America*, 121 SW3d 636, 639 (Tenn, 2003) (noting that "[t]o determine which limitations statute controls Gunter's [the plaintiff's] claim against the laboratory, we must first decide whether the claim sounds in medical malpractice or negligence" and looking to the complaint for this determination); *Weiner v Lenox Hill Hosp*, 88 NY2d 784, 787-788; 673 NE2d 914 (1996) (noting that "[t]o determine which Statute of Limitations governs plaintiff's claim against the Hospital, we must decide whether the claim sounds in medical malpractice or negligence," and holding, on the basis of an examination of the complaint, that "the complaint in this case sounds in negligence, not medical malpractice"); see also *Belleville*, 152 Mich App at 551 ("In determining which limitation period controls, the focus must be on the type of interest allegedly harmed. . . . The gravamen of an action is determined by reading the claim as a whole. . . . Further, this Court will look beyond procedural labels to see exactly what a party's complaint is before deciding whether it should be barred."); *Barnard v Dilley*, 134 Mich App 375, 378; 350 NW2d 887 (1984) ("The applicable period of limitation depends upon the theory actually pled when the same set of facts can support either of two distinct causes of action."). See also *MacDonald v Barbarotto*, 161 Mich App 542, 547; 411 NW2d 747 (1987) (noting that "[i]n determining the appropriate statute of limitation governing a case, we read the party's claim as a whole and look beyond the procedural labels to determine the exact nature of the claim," and looking to the complaint to determine that the claim was for ordinary negligence).

7

This makes sense.  A plaintiff speaks through his or her complaint,[22] so what claims a plaintiff is asserting can only be determined by reference to the allegations in the complaint.  The claim itself is simply "[a] statement that something yet to be proved is true," "[t]he assertion of an existing right," or "[a] demand for . . . a legal remedy to which one asserts a right[.]"[23]  A claim "sounds" in a particular theory permitting recovery, such as tort or contract.[24]  A plaintiff articulates a claim and the supporting legal theory in his or her complaint,[25] not in the evidentiary record.[26]  Evidence outside

[22] See MCR 2.101(B) ("A civil action is commenced by filing a complaint with a court.").

[23] *Black's Law Dictionary* (10th ed).

[24] *Id*. ("Sound" means "**1.** To be actionable (in) <her claims for physical injury sound in tort, not in contract> [and] **2.** To be recoverable (in) <his tort action sounds in damages, not in equitable relief>."); see also Garner, *A Dictionary of Modern Legal Usage*, p 818 (1995) ("This verb [sound] has a special legal sense, 'to be actionable (in).'  E.g., . . . 'It is, of course, to the advantage of any lienor . . . to plead his claim as *sounding* not in contract but in tort.' ") (citation omitted).

[25] MCR 2.111(B)(1); see *Dacon v Transue*, 441 Mich 315, 330; 490 NW2d 369 (1992) ("To assert a *theory of liability*, MCR 2.111(B)(1) specifies that an allegation must 'state[ ] . . . the facts, without repetition, on which pleader relies,' and state 'the specific allegations necessary reasonably to inform the adverse party' of the pleader's claims.") (emphasis added).

[26] See *Davis v Kramer Bros Freight Lines, Inc*, 361 Mich 371, 376-377; 105 NW2d 29 (1960) (A cause of action, i.e., a claim, "means merely the pleaded concurrence of facts giving rise to the obligation sought to be enforced against the defendant.  The plaintiff's statement of a cause of action must not be confused with his right to judgment.  Whether judgment will ever result will depend upon the proof plaintiff offers in support of the cause he asserts . . . .").  Indeed, the court rules specify a narrow class of outside written instruments that must be attached to a pleading if a claim or defense is based on such a written instrument, see MCR 2.110(A) (defining "pleading" to include "complaint"), and those instruments can be considered part of the pleading itself.  See MCR 2.113(F) (listing the various written instruments that must be attached to a pleading under certain circumstances and establishing that if attached the instruments are "part of the pleading

the complaint, then, cannot be considered to determine the nature of plaintiff's claim; instead, those materials represent the factual support for the claim.[27]

As recognized by one scholar, under the principle of notice pleading a "court is compelled to ascertain the [legal] theory as best it can by scrutiny of the complaint[.]"[28] "[I]f the pleading is negative in this regard," that is, does not give notice of the legal theory, then "how can there be any proper ascertainment" of the theory?[29] It would work an injustice if the plaintiff's theory could develop and fluctuate without any formal amendments as the case progresses, thus making it necessary for the defendant to be on guard against all possible legal theories inherent in the complaint.[30] This would prevent defendants from relying on procedural defenses that ordinarily may be asserted in advance of trial.[31]

---

for all purposes").

[27] Cf. MCR 2.302(B)(1) (permitting discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the *claim* or defense of the party seeking discovery or to the *claim* or defense of another party") (emphasis added).

[28] Millar, Civil Procedure of the Trial Court in Historical Perspective (1952), p 199.

[29] *Id.*

[30] *Id.* at 198 (noting that if "every statement of claim carries with it every possible theory which can find support in the facts alleged, or even of the facts to be proved," a defendant would have "to prepare on the law for eventualities which he may never be required to meet" and "[i]f he fails to be armed at all points, he may be unjustly overthrown by a wholly unexpected development in point of theory which he is not ready to answer").

[31] *Id.* at 199 (explaining that a rule that allows the theory to develop throughout the trial would undermine "the case where identification is required in advance of trial, as where it should become necessary to distinguish between a claim in contract and a claim in tort for the purpose of determining whether, under the State practice, there may be a

9

As amici curiae the American Medical Association and the Michigan State Medical Society point out, the requirement that the nature of claims be determined from the complaint has significant practical implications in the context of medical malpractice actions. Plaintiffs who file medical malpractice actions are required to serve a written notice of intent to sue 182 days prior to filing the action[32] and to file an affidavit of merit signed by a health professional.[33] The efficacy of these requirements would be undermined if a case could proceed to discovery, and possibly even a jury trial,[34] to determine if those requirements had to be met.

For these reasons, the nature of a plaintiff's claim—i.e., whether it is for medical malpractice or ordinary negligence—should be determined solely by reference to the allegations in the complaint. As with any such review of a complaint, "[a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant."[35] And we look beyond the labels given to the claims and instead read the complaint as a whole, seeking the gravamen of the claims.[36] This not only prevents

---

preliminary attachment of property or the holding of a defendant to bail").

[32] MCL 600.2912b(1).

[33] MCL 600.2912d(1).

[34] See MCR 2.116(I)(3).

[35] *Maiden*, 461 Mich at 119; see also *Campos v Gen Motors Corp*, 71 Mich App 23, 26; 246 NW2d 352 (1976) (stating that the pleaded allegations must be taken as true when deciding what theory a complaint sounded in for purposes of deciding whether it was time-barred under the applicable statute of limitations).

[36] *Altobelli*, 499 Mich at 303.

"artful pleading,"[37] but also accounts for the risk that a party honestly, though "incorrectly[,] invoke[s] language that designates a claim as either medical malpractice or ordinary negligence, when the opposite is in fact true."[38]

In sum, when faced with a motion alleging untimely claims that requires a court to determine the nature of the claims in the complaint, the court must determine the nature of the claims solely by reference to the complaint under MCR 2.116(C)(8).[39] Once that task is accomplished, the court must then determine whether the claim or claims in the complaint were timely, a determination properly made under MCR 2.116(C)(7).

---

[37] *Maiden*, 461 Mich at 135.

[38] *Szymborski v Spring Mountain Treatment Ctr*, 403 P3d 1280, 1285 (Nev, 2017).

[39] As we noted in *Bryant*, 471 Mich at 432-433, "[when] the line between ordinary negligence and medical malpractice is not easily distinguishable, plaintiffs are advised as a matter of prudence to file their claims alternatively in medical malpractice and ordinary negligence within the applicable period of limitations." Plaintiffs who lack information prior to initiating a medical malpractice action can, in appropriate cases, resort to the doctrine of *res ipsa loquitur* to create an inference of negligence even in the absence of expert testimony. See *Woodard v Custer*, 473 Mich 1, 6-7; 702 NW2d 522 (2005). Defendants, too, have tools to address underdeveloped complaints that could sound in either medical malpractice or ordinary negligence. One is to "move for a more definite statement before filing a responsive pleading" if the "pleading is so vague or ambiguous that it fails to comply with the requirements of these rules." MCR 2.115(A). If a complaint for ordinary negligence turns out, after factual development, to involve only matters of medical judgment in the course of a professional relationship (i.e., the claim is provable only as a medical malpractice claim), the defendant could move for summary disposition under MCR 2.116(C)(10) on the basis that there is no factual dispute regarding the breach of an *ordinary* standard of care.

11

## III. DETERMINING WHETHER THE CLAIM IS BARRED UNDER MCR 2.116(C)(7) BY THE STATUTE OF LIMITATIONS

A statute of limitations is simply a " 'law that bars claims after a specified period; specif[ically], a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued.' "[40] This determination is properly made under MCR 2.116(C)(7), which, by its terms, applies to motions for summary disposition based on the "statute of limitations." The essence of such a motion is that the plaintiff's claim is untimely.[41] A defendant raising the statute of limitations must show that the plaintiff's claim is time-barred, whereas the plaintiff, to refute the defense, must prove "that his claim is timely."[42] In making this determination, the court may need to consider evidence submitted by the parties.[43] Factual disputes regarding timeliness thus fit squarely within

---

[40] *Frank v Linkner*, 500 Mich 133, 142; 894 NW2d 574 (2017), quoting *Black's Law Dictionary* (10th ed) (emphasis omitted; alteration in original).

[41] See generally *Palenkas v Beaumont Hosp*, 432 Mich 527, 550; 443 NW2d 354 (1989) (discussing the burdens of proof regarding statute of limitations defenses, focusing on whether the claim is timely or not); *Lothian v Detroit*, 414 Mich 160, 165, 168; 324 NW2d 9 (1982) (noting that "[a] statutory limitations period represents a legislative determination of that reasonable period of time that a claimant will be given in which to file an action" and that "[l]aches differs from the statutes of limitation in that ordinarily it is not measured by the mere passage of time"); *Bigelow v Walraven*, 392 Mich 566, 576; 221 NW2d 328 (1974) (noting that purposes of statutes of limitations include " 'compel[ling] the exercise of a right of action within a reasonable time' " and preventing stale claims) (citation omitted); 54 CJS, Limitations on Actions, § 2, p 18 ("The essential attribute of a statute of limitations is that it establishes a reasonable time within which an action may be brought on causes of action which it affects. . . . A statute of limitations fixes a time beyond which the courts generally cannot entertain a cause of action[.]").

[42] *Palenkas*, 432 Mich at 550.

[43] See Wright & Miller, 5 Federal Practice & Procedure (3d ed), § 1277, p 642 (observing that even when a complaint appears time-barred on its face, "there may be facts tolling

12

MCR 2.116(G)(5), which requires consideration of the extrinsic evidence when deciding a motion under MCR 2.116(C)(7).

## IV. PROBLEMS WITH THE MAJORITY'S APPROACH

While the majority concludes that it is unnecessary to reach the issue of whether the court may look beyond the complaint to determine its contents, the majority's analysis treats this issue as a fact question. But if the nature of a plaintiff's claim can be determined with regard to evidence outside the complaint—and thus is a question of fact—it is hard to see why the Court of Appeals' remand in this case was improper. The majority focuses on the language of MCR 2.116(G)(5), particularly its directive that "[t]he affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered by the court when the motion is based on subrule (C)(1)-(7) or (10)." When MCR 2.116(G)(5) applies, the rule requires that a court consider all evidence then filed in deciding the motion. The majority, however, reads a prohibition into the rule—a court cannot order further factual development to decide the motion.

The majority, however, cites no support for this limitation on the court's ability to allow factual development of a fact question. The rule is one of inclusion, not exclusion. Nothing in the rule establishes that a court is prohibited from considering any evidence. Additionally, under the majority's approach, the factual record crystallizes without regard to whether discovery is complete or whether the court needs additional evidence to make

the running of the statute, such as by equitable estoppel, that do not appear in the complaint, which means that the motion to dismiss [as untimely] might be premature").

13

its factual determination. This would be an odd, perhaps even singular, way to resolve factual issues and would disregard courts' general authority to require additional evidentiary development when deciding questions of fact.[44] And it is a rule we have never expressed in past cases. Indeed, in cases dealing with motions subject to MCR 2.116(G)(5), we have done the opposite, i.e., remanded "for further development of the factual record through discovery or, if appropriate, for amendment of the pleadings."[45]

Further, reading MCR 2.116(G)(5) to prohibit factual development also ignores that summary disposition will often be premature without sufficient factual development. As a general rule, courts will not decide motions for summary disposition before the end of discovery on a disputed issue unless there is no reasonable chance that discovery will uncover factual support for the nonmoving party's position.[46] Indeed, the Court of Appeals has recognized that, although courts reviewing motions under MCR 2.116(C)(7)

---

[44] See *Oliver v Smith*, 269 Mich App 560, 567; 715 NW2d 314 (2006) (stating that a trial court should not grant summary disposition before discovery is complete if further discovery could reveal factual support for the opposing party); MCR 7.216(A)(5) ("The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just . . . remand the case to allow additional evidence to be taken[.]"); MCR 7.316(A)(5) ("While a matter is pending in the Supreme Court, the Court may, at any time, in addition to its general powers . . . adjourn the case until further evidence is taken and brought before it[.]").

[45] *CC Mid West, Inc v McDougall*, 470 Mich 878 (2004) (addressing an MCR 2.116(C)(4) motion challenging jurisdiction and noting explicitly that MCR 2.116(G)(5) applied to that motion).

[46] See *Dextrom v Wexford Co*, 287 Mich App 406, 431; 789 NW2d 211 (2010); see also MCR 2.116(H) (permitting a party to oppose a motion by showing by affidavit that the facts necessary to support a party's position cannot be presented because they have not yet been procured).

14

must consider the evidence listed in MCR 2.116(G)(5), "if a question of fact exists so that factual development could provide a basis for recovery, caselaw states that dismissal without further factual development is inappropriate."[47]

The majority also fails to grapple with the implications of MCR 2.116(I)(3). That rule expressly allows for immediate trial on disputed issues of fact involving MCR 2.116(C)(7) motions:

> A court may, under proper circumstances, order immediate trial to resolve any disputed issue of fact, and judgment may be entered forthwith if the proofs show that a party is entitled to judgment on the facts as determined by the court. An immediate trial may be ordered if the grounds asserted are based on subrules (C)(1) through (C)(6), or if the motion is based on subrule (C)(7) and a jury trial as of right has not been demanded on or before the date set for hearing. If the motion is based on subrule (C)(7) and a jury trial has been demanded, the court may order immediate trial, but must afford the parties a jury trial as to issues raised by the motion as to which there is a right to trial by jury.[48]

The fact that the rules explicitly provide for a trial on factual issues related to motions brought under MCR 2.116(C)(7) strongly indicates that MCR 2.116(G)(5) is not a prohibition on evidentiary development.[49]

In this case, discovery is not complete, and plaintiff has not even been able to depose the aide responsible for transporting plaintiff, and the aide was most likely the

---

[47] *Dextrom*, 287 Mich App at 431.

[48] MCR 2.116(I)(3).

[49] It would be rather astounding if a trial could be held to determine the nature of a claim as pleaded in a complaint. Yet if the majority is correct that this is a fact question, such trials are necessarily permissible. The majority fails to address this puzzling result.

central witness in the case.[50] Under the majority's reasoning, the court is prevented from considering the aide's testimony simply because defendants successfully filed their motion for summary disposition before discovery could be completed. In effect, the majority's analysis creates a game of musical chairs, where parties will rush to file motions for summary disposition in order to freeze discovery on the issue. Recognizing that the nature of a claim must be determined by the nature of the complaint alone both comports with the pleading principles discussed above and avoids such an odd outcome.

It is hard to understand how evidence outside the pleadings can help a court determine what claims the plaintiff has asserted in the complaint. In our system, the plaintiff gets to decide what facts to allege and what legal theories of recovery to assert.[51]

---

[50] Plaintiff's counsel argued at the April 2015 motion for summary disposition:

> In this case, I don't even know, because we haven't had a chance to depose Ms. McCorkle (ph), whose nurse—who apparently dropped my client, that whether she was a nurse or a nurse's aide or exactly what her position was. . . .

> [W]e pled a number of things as defendant—I'm sorry, a number of theories as defendant stated; however, we haven't been able to complete discovery to find out exactly which theory applies. They don't know if it was because two nurses were supposed to have assisted, whether the nurse in question just wasn't able to physically assist her, what the circumstances were that caused her to drop her.

[51] *The Fair v Kohler Die & Specialty Co*, 228 US 22, 25; 33 S Ct 410; 57 L Ed 716 (1913) (Holmes, J.) ("Of course the party who brings a suit is master to decide what law he will rely upon . . . ."). See also *Alexander v Electronic Data Sys Corp*, 13 F3d 940, 943-944 (CA 6, 1994) (asserting in the context of the well-pleaded complaint rule that "the plaintiff is the master of his complaint").

The pleadings can be amended in appropriate circumstances,[52] but their meaning cannot be retroactively altered by evidence.

## V. CONCLUSION

Accordingly, I would hold that the Court of Appeals erred by remanding for further factual development rather than deciding the nature of plaintiff's claims by reference to the complaint alone.

David F. Viviano
Bridget M. McCormack
Elizabeth T. Clement

---

[52] See MCR 2.118.

17